1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14

MICHAEL MALONE, *et al.*,

Plaintiffs,

v.

CLARK NUBER, P.S., *et al.*,

Defendants.

Case No.  C07-2046RSL

ORDER GRANTING IN PART
MOTIONS TO DISMISS AND
GRANTING LEAVE TO AMEND

15
16
17
18
19
20
21
22
23
24
25
26
27

## I.  INTRODUCTION

This matter comes before the Court on five motions to dismiss filed by the following
"moving defendants:" (1) Clark Nuber P.S. and two of its employees, Thomas Joseph Sedlock,
an attorney, and James Dubeck, a certified public accountant (collectively, "Clark Nuber"); (2)
the Seattle law firm of Ahrens & DeAngeli, PLLC and one of its partners, Edward Ahrens
(collectively, "A&D"); (3) Enterprise Financial Services and the former president of one of its
subdivisions, Paul Vogel (collectively, "Enterprise"); (4) Multi National Strategies, LLC,
Coastal Trading LLC, Michael N. Schwartz, and David Schwartz (collectively, the "MNS
defendants"); and (5) the "HVB entities," which include Bayerische Hypo- und Vereinsbank AG
("HVB-AG"), Bayerische Hypo- und Vereinsbank AG – New York Branch ("HVB-New
York"), and HVB US Finance f/k/a HVB Structured Finance ("HVB-Finance," which plaintiffs

28

ORDER REGARDING
MOTIONS TO DISMISS - 1

sued as "Bayerische Hypo- und Vereinsbank US Finance").  Plaintiffs are Michael and Barbara Malone, a married couple, their wholly owned corporation, Belmar Trading, Inc., and Belmar Investment Trust.  Plaintiffs allege that the defendants, who include the moving defendants and other entities and individuals too numerous to list, designed, promoted, and defrauded them into participating in an abusive tax shelter called the "Coastal Trading Common Trust Fund Series III" and the "Coastal Trading Common Trust Fund Series IV" (collectively, "CTF").  The IRS ultimately disallowed CTF and imposed penalties and interest on plaintiffs, which they now seek to recover from defendants.  Plaintiffs also seek to recover the fees they paid to defendants for professional services that, accordingly to plaintiffs, were performed negligently or not at all.

For the reasons set forth below, the Court grants the moving defendants' motions in part and denies them in part.[1]

## II.  DISCUSSION

**A.    Background Facts.**

The First Amended Complaint alleges that Michael Malone ("Malone") is a "successful businessman" who, in 2001, received substantial income and capital gains from the sale and merger of his company, AEI.  Malone subsequently sought investment and tax planning advice from Clark Nuber, which had been his accounting firm for approximately ten years.  Sedlock and Dubeck advised Malone to invest in CTF.  Clark Nuber represented to Malone "that if he were to invest in CTF, there was a reasonable likelihood that he would make a profit, but if he lost money in CTF, he could use the losses from CTF to offset his 2001 capital gains and ordinary income."  Amended Complaint at ¶ 43.  Clark Nuber sent plaintiffs a memorandum on October 31, 2001 (the "Memorandum") summarizing CTF, explaining the transaction, and outlining the risks.  The Memorandum informed Malone that he would "receive a

---

[1] The Court heard oral argument in this matter on May 12, 2008.

ORDER REGARDING
MOTIONS TO DISMISS - 2

comprehensive tax opinion from Sidley Austin[2] a highly respected large international law firm that you can rely on.  The tax opinion will prevent the imposition of penalties in the event of a successful IRS challenge."  First Declaration of Michael Malone, (Dkt. #36) ("First Malone Decl."), Ex. 1.  The Memorandum also informed plaintiffs that the "principals have a mixed history as tax shelter promoters" and stated that the "promoters and legal counsel predict a 50-60% chance of success [in the event of an IRS audit].  Practically, the chance of success is somewhat higher since estimates of this nature are usually very conservative."  Id.

Because the mechanics of CTF are largely irrelevant for purposes of this motion, they are summarized only very briefly.  The investment scheme used a loan from HVB-Finance to purchase foreign currency options in simultaneous "straddle" and "strangle" positions.  CTF was set up to generate both losses and gains.  The gains would be allocated to charitable trusts, which were tax-indifferent entities, and the losses were allocated to the investors on a pro rata basis.  Amended Complaint at ¶ 105.  Plaintiffs allege that the loan was a sham and the loan funds never left the bank.  Nevertheless, they were charged interest and management fees on the loan.

The Amended Complaint alleges that "[i]n order to protect itself and insulate itself from liability . . . Clark Nuber falsely claimed that Ed Ahrens was Malone's attorney and Malone's independent adviser pertaining to CTF."  Amended Complaint at ¶ 85.  It alleges that in fact, Ahrens was one of the promoters of CTF, and he had an undisclosed conflict of interest in representing Malone.  Id.  The Amended Complaint further alleges that Clark Nuber falsely promised that Ahrens and another defendant would provide an insurance policy for the recourse financing.  Id. at ¶ 90.

Plaintiffs allege that Coastal Trading LLC "designed, implemented, and executed the CTF transaction."  Amended Complaint at ¶ 141.  They further allege that the MNS defendants,

---

[2] The law firm of Sidley Austin LLP ("Sidley Austin") was a named defendant but has settled its claims with plaintiffs.

ORDER REGARDING
MOTIONS TO DISMISS - 3

1    "acting through Clark Nuber, solicited Malone to investment [sic] in [CTF]."  Id. at ¶ 106.

2    In November 2001, plaintiff wrote a letter to Enterprise asking if it would create and act

3    as trustee for a common trust fund in connection with CTF.  Enterprise Trust agreed to create

4    and administer CTF.  Enterprise earned fees from the CTF transaction.  Id. at ¶ 142.

5    Plaintiffs allege that in reliance on defendants' advice and recommendations, Malone

6    invested in the CTF program by committing $1.7 million in cash and $15 million in borrowed

7    funds.  Amended Complaint at ¶ 102.  Malone invested the funds on November 14, 2001, id. at

8    ¶¶ 104, 107, and entered into the CTF transaction "[d]uring the last quarter of 2001."  Id. at ¶¶

9    69, 110.  CTF allocated nearly $13 million in losses to Malone via Belmar Trading.

10   In March 2002, plaintiffs received the promised letter from Sidley Austin partner and

11   defendant R. J. Ruble.  Sidley Austin charged $50,000 for the letter.  Amended Complaint at

12   ¶ 101.  The letter stated, "There is a greater than 50 percent likelihood that the tax treatment of

13   the transactions would be upheld if challenged by the IRS."  Id. at 126(j).

14   The IRS ultimately disallowed the CTF tax shelter.  Malone paid a tax deficiency of over

15   $3.5 million because he "lost any offset to his capital gains tax obligation;" he also "paid interest

16   and penalties of nearly $365,000 to the IRS."  Amended Complaint at ¶¶ 162, 166.  Plaintiffs

17   allege that defendants knew, but concealed from them, that CTF "was an abusive tax shelter,

18   consisting of a sham loan, totally lacking in economic substance,[3] with little or no likelihood of

19   either making a profit or, if it lost money and the investor claimed a tax write-off on his income

20   tax return, of having the loss deduction upheld by the IRS in the event of an audit."  Id. at ¶ 46.

21   Plaintiffs filed their complaint in King County Superior Court.  Defendants removed the

22   action to this Court pursuant to 18 U.S.C. § 1441(b).  Plaintiffs assert claims for fraud,

23   conspiracy, material misrepresentation and omission, professional negligence, breach of

24   contract, breach of fiduciary duty, unjust enrichment, constructive trust, and rescission.  They

25

26   _____

27   [3] The IRS does not allow deductions for investments that lack economic substance.

28   ORDER REGARDING
     MOTIONS TO DISMISS - 4

1   also assert claims for violations of the Securities Exchange Act of 1933, the Securities Exchange

2   Act of 1934, the Investment Advisers Act of 1940, the Washington State Securities Act (the

3   "WSSA"), the Washington Criminal Profiteering Act, and the Washington Consumer Protection

4   Act (the "CPA").

5   **B.    Personal Jurisdiction and Venue.**

6        Enterprise, Vogel, the MNS defendants, and the HVB entities allege that plaintiffs have

7   not established that this Court has personal jurisdiction over them.  Plaintiffs have the burden of

8   making a prima facie showing of personal jurisdiction.  See, e.g., Bourassa v. Desrochers, 938

9   F.2d 1056, 1057 (9th Cir. 1991) (internal citation omitted).  Personal jurisdiction and venue in

10  this case are governed by Section 27 of the 1934 Act.  Section 27 confers jurisdiction in the

11  district courts over violations of federal securities law.  15 U.S.C. § 78aa.  However, both HVB-

12  NY and HVB-Finance included provisions in their contracts with Malone that require that

13  actions against them be brought in New York.  Declaration of John Gallagher, (Dkt. #79), Ex. A

14  at p 22, Ex. C at p. 18.  Plaintiffs have not argued that those provisions should be disregarded or

15  shown any justification for doing so.  This Court is therefore not the proper venue for plaintiffs'

16  claims against HVB-NY and HVB-Finance and those claims are dismissed for improper venue.

17  The Court will not transfer the case against those entities to New York because plaintiffs have

18  not requested that it do so.

19       As for the other defendants, this district is a proper venue because an "act or transaction

20  constituting the violation occurred" in this district.  15 U.S.C. § 78aa.  The Ninth Circuit has

21  explained that under the coconspirator venue theory, where an action is brought against multiple

22  defendants alleging a common scheme of acts or transgressions in violation of the securities

23  statutes, as long as venue is established for any defendant in the forum district, venue is proper

24  as to all defendants.  Securities Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1314 (9th Cir.

25  1985).  In addition, "where a claim of federal securities violations is brought in a proper district,

26  the test for whether the district court has personal jurisdiction over a defendant is whether the

27

28  ORDER REGARDING
    MOTIONS TO DISMISS - 5

1  defendant had minimum contacts with the United States." Bourassa, 938 F.2d at 1057 (citing

2  Vigman, 764 F.2d at 1314).  The court in Vigman explained, "So long as a defendant has

3  minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction

4  over the defendant in any federal district court." Vigman, 764 F.2d 1316.  Except HVB-AG,

5  these defendants all have minimum contacts with the United States, and the Court has personal

6  jurisdiction over them.

7      However, plaintiffs have not alleged any facts to show that HVB-AG, a bank organized

8  under the laws of Germany with its principal place of business in Germany, has minimum

9  contacts with the United States.  Accordingly, HVB-AG's motion to dismiss for lack of personal

10  jurisdiction is granted.

11  **C.    Applicable Dismissal Standards.**

12      Defendants have filed 12(b)(6) motions for failure to state a claim upon which relief can

13  be granted.  The complaint should be liberally construed in favor of the plaintiff and its factual

14  allegations taken as true.  See, e.g., Oscar v. Univ. Students Coop. Ass'n, 965 F.2d 783, 785 (9th

15  Cir. 1992).  The Supreme Court has explained that "when allegations in a complaint, however

16  true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at

17  the point of minimum expenditure of time and money by the parties and the court." Bell

18  Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1966 (2007) (internal citation and

19  quotation omitted).

20      "A district court ruling on a motion to dismiss may consider documents whose contents

21  are alleged in a complaint and whose authenticity no party questions, but which are not

22  physically attached to the plaintiff's pleading." Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th

23  Cir. 1998) (internal citation and quotation omitted).  Both parties have submitted additional

24  documents for the Court to consider, and the Court has considered the additional documents.

25  However, the Court will not accept plaintiffs' invitation to take judicial notice of the facts

26  alleged in complaints filed in two other cases.  Declaration of Brian Isaacson, (Dkt. #35), Exs. 3,

27

28  ORDER REGARDING
    MOTIONS TO DISMISS - 6

4.  The allegations in complaints are, of course, merely allegations.  The Court also declines to take judicial notice of the facts in the unpublished opinions in <u>Williams v. Sidley Austin Brown & Wood LLP</u> although it takes notice of the fact that those opinions exist.  The Ninth Circuit has explained that "taking judicial notice of findings of fact from another case exceeds the limits of Rule 201."  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1114 (9th Cir. 2003).  The Court has considered the Senate Report because it was referenced in the Amended Complaint.

During oral argument on these motions, plaintiffs requested that they be granted leave to amend any of their claims found to be deficient.  Accordingly, in analyzing each claim, the Court also considers the propriety of granting leave to amend.

**D.      Claims of the Belmar Plaintiffs.**

Clark Nuber argues that plaintiffs have not stated any claims on behalf of Belmar Trading, Inc. and Belmar Investment Trust.  They argue that the Amended Complaint does not allege that defendants had any duties to those entities or any contracts with them.  Plaintiffs have not responded to or disputed those contentions.  Accordingly, the claims brought by Belmar Trading, Inc. and Belmar Investment Trust are dismissed.

**E.      Federal Securities Claims.**

Defendants allege that most of plaintiffs' claims are time barred.  Plaintiffs filed their complaint on September 7, 2007, approximately five and a half years after they invested in CTF.

Plaintiffs assert claims under Sections 12 and 15 of the Securities Act of 1933 and claims under SEC Rule 10b-5 and Sections 10(b)[4] and 20 of the Securities Exchange Act of 1934 ("Exchange Act").  Section 13 of the Securities Act of 1933 provides that any claim under Section 12 of the act must be brought "[i]n no event . . . more than three years after the . . . sale." 15 U.S.C. § 77m; <u>see also</u> <u>Dodds v. Cigna Sec., Inc.</u>, 12 F.3d 346, 349 n.1 (2d Cir. 1993)

---

[4] To prevail on a cause of action for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5, an investor must establish fraud "in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5; 15 U.S.C. § 78j(b).

ORDER REGARDING
MOTIONS TO DISMISS - 7

("Since Section 15 merely creates a derivative liability for violations of Sections 11 and 12,
Section 13 applies to it as well"); In re Alstom, 406 F. Supp. 2d 402, 409-410 (S.D.N.Y. 2005).
The Ninth Circuit has held that the limitations period is "absolute." See, e.g., SEC v. Seaboard
Corp., 677 F.2d 1301, 1308 (9th Cir. 1982).

Similarly, claims involving "fraud, deceit, manipulation, or contrivance in contravention
of a regulatory requirement concerning the securities laws" under the Exchange Act must be
brought "not later than the earlier of (1) 2 years after the discovery of the facts constituting the
violation, or (2) 5 years after such violation." 28 U.S.C. § 1658(b); see also Johnson v. Alijian,
490 F.3d 778, 783 (9th Cir. 2007) (explaining that the period of limitations "is measured from
the point of violation"); In re Heritage Bond Litig., 289 F. Supp. 2d 1132, 1147-48 (C.D. Cal.
2003) (applying the statute of limitations to claims under Sections 10(b) and 20(a)). The five-
year statute of repose "is an absolute limitation which applies whether or not the investor could
have discovered the violation." Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d
697, 704 (2d Cir. 1994).

The Amended Complaint states that the securities transaction was completed no later than
December 28, 2001.[5] Amended Complaint at §§ 104-110. Plaintiffs, however, did not file their
complaint until approximately six years later. Although plaintiffs argue about when they
discovered the violations, they do not address the statutory absolute bars, which run from the
date of the transaction. The absolute nature of the bars also defeats plaintiffs' argument that
Washington's continuous representation rule[6] tolls the statute of limitations. Moreover, plaintiff

---

[5] Plaintiffs contend that their *state* securities claim is not barred in part because they did
not learn that the loan was fraudulent until 2007. Plaintiffs have not argued that the loan is a
security for purposes of the federal securities laws, nor does it appear to fall within the
definition of a security. See, e.g., McNabb v. SEC, 298 F.3d 1126 (9th Cir. 2002) (citing
Reeves v. Ernst & Young, 494 U.S. 56 (1990)).

[6] Washington's continuous representation rule tolls the statute of limitations for some
claims until representation on the matter ends. See, e.g., Burns v. McClinton, 134 Wn. App.

ORDER REGARDING
MOTIONS TO DISMISS - 8

1   has not cited any authority to show that Washington's continuous representation rule tolls the

2   limitations period for federal securities claims.  Similarly, plaintiffs argue that they paid some of

3   the defendants' fees within the limitations period.  However, they have not cited any authority to

4   show that the payment of professional fees, rather than the purchase or sale of securities, triggers

5   the statute.  Accordingly, plaintiffs' federal securities claims are time barred and dismissed with

6   prejudice.

7   **F.      Federal Investment Advisers Act Claim.**

8          Plaintiffs allege that defendants violated the federal Investment Advisers Act of 1940, 15

9   U.S.C. § 80b-1 *et seq*. (the "IAA").  The IAA prohibits the following transactions by investment

10  advisers: "(1) employ[ing] any device, scheme, or artifice to defraud any client or prospective

11  client; (2) engag[ing] in any transaction, practice, or course of business which operates as a

12  fraud or deceit upon any client or prospective client; or . . . (4) engag[ing] in any act, practice, or

13  course of business which is fraudulent, deceptive, or manipulative."  15 U.S.C. § 80b-6.

14         The Amended Complaint describes only the MNS defendants as investment advisers.

15  Amended Complaint at ¶¶ 204, 243.  None of the other defendants is described as an investment

16  adviser, and they do not appear to be covered by the statute.  An "investment adviser" is defined

17  in the statute as a "person who, for compensation, engages in the business of advising others . . .

18  as to the value of securities or as to the advisability of investing in, purchasing, or selling

19  securities, . . . but does not include . . . any lawyer, accountant . . . whose performance of such

20  services is solely incidental to the practice of his profession."  15 U.S.C. § 80b-2(11)(B).

21  Although the Amended Complaint broadly alleges that all defendants "were engaged in the

22  business of advising Plaintiff and others," such a conclusory statement without any factual

23  support is insufficient.  Amended Complaint at ¶ 245; <u>Twombly</u>, 127 S. Ct. at 1964-65

24  (explaining that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

25

26  ───────────────

27  285, 295 (2006).

28  ORDER REGARDING
    MOTIONS TO DISMISS - 9

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The statute specifically exempts entities whose investment advice is "solely incidental" to their tax, accounting, and legal professions respectively.  The Amended Complaint does not allege any facts to show that the statutory exemption is inapplicable.  Accordingly, plaintiffs have not shown that the IAA covers any of the defendants other than the MNS defendants.

Any amendment of the IAA claims would be futile.  The IAA does not provide a private right of action for damages.  The sole private remedy available under the IAA is "to void an investment advisers contract" under § 80b-15, a claim plaintiffs have not asserted.  Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 24-25 (1979).  Plaintiffs' claim for damages under the IAA is untenable and fails as a matter of law.

Also, it appears that plaintiffs' IAA claim is time barred.  The IAA does not include a statute of limitations.  When Congress has failed to provide a statute of limitations for a federal cause of action, courts generally borrow the state statute of limitations most analogous to the case at hand.  See, e.g., Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson. 501 U.S. 350, 355 (1991).  The Supreme Court has recognized a "closely circumscribed exception" when it finds that "a state limitations period would frustrate the policies embraced by the federal enactment."  There is a dearth of case law on the applicable limitations period, perhaps because the statute affords such a limited private remedy.  Two published cases both applied the limitations period applicable to claims under the Exchange Act.  See Brown v. Producers Livestock Loan Co., 469 F. Supp. 27, 33 (D. Utah 1978) (explaining that the "language of the [IAA] is strikingly similar to that of § 10(b) and, therefore, the court finds it appropriate to apply the same limitations periods as applies to § 10(b) actions");[7] Kahn v. Kohlberg, Kravis, Roberts

---

[7] Brown was decided before there was an express federal statute of limitations applicable to Section 10(b) actions.  Therefore, the Brown court applied the state statute of limitations applicable to claims under Section 10(b).

ORDER REGARDING
MOTIONS TO DISMISS - 10

& Co., 970 F.2d 1030, 1039 (2d Cir. 1992) (finding, after detailed analysis, that the "period used in the Securities Acts is the most appropriate since it reflects the accepted balancing of the same interests and is consistently applied to claims posing similar factual and legal issues"); see also In re Am. Funds Fees Litig., 2005 U.S. Dist. LEXIS 41884 at *23-24 (C.D. Cal. 2005) (following Kahn). Following the reasoning set forth in Kahn, the Court also finds that the statute of limitations in the Exchange Act is applicable.[8] As the court explained in Kahn, a uniform federal statute of limitations is preferred to "avoid uncertainty and an excess of useless litigation." Kahn, 970 F.2d at 1036. In addition, claims under the IAA are most analogous to claims under the Exchange Act. See id. (explaining that the IAA and the Exchange Act "regulate the honesty and integrity of those who deal commercially in the national securities markets"); see also SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195 (1963) (explaining that "Congress intended the [IAA] to be construed like other securities litigation enacted for the purpose of avoiding frauds") (internal citations omitted). Because plaintiffs' federal securities claims are time barred, their claims under the IAA are also barred.

**G.  Supplemental Jurisdiction.**

The dismissal of the federal securities claims and claims under the IAA eliminates federal questions from this case. The parties are not diverse. The Malones reside in Washington, and Clark Nuber is alleged to be a Washington corporation. The Court must therefore determine whether to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.

"A federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)." Acri v. Varian Assocs., 114

---

[8] Even if the Court found that another statute of limitations is more closely analogous, plaintiffs' claim would still be time barred. As set forth more fully in the text below, claims for fraud, misrepresentation, breach of fiduciary duty and claims under the WSSA involve a three-year statute of limitations. See also Transamerica Mortgage Advisors, Inc., 444 U.S. at 17 (noting that in enacting the IAA, "Congress intended to impose enforceable fiduciary obligations"). The federal Investment Company Act, 15 U.S.C. § 80a-1 et seq., which regulates the conduct of investment companies, includes a five-year statute of limitations.

ORDER REGARDING
MOTIONS TO DISMISS - 11

1    F.3d 999, 1000 (9th Cir. 2000) (en banc).  If the federal claims are dismissed before trial, the

2    state law claims "should" be dismissed.  United Mine Workers v. Gibbs, 383 U.S. 715, 726

3    (19666).  Courts also consider the values "of economy, convenience, fairness, and comity."

4    Acri, 114 F.3d at 1001.  Although the Court has dismissed all claims over which it had original

5    jurisdiction, this case does not present novel or complex issues of state law.  In addition, this

6    Court is very familiar with the facts and law presented after reading the parties' voluminous

7    filings and the relevant authority and holding a half-day hearing on the pending motions.  In

8    addition, during oral argument, all parties stated that if the Court were to dismiss the federal

9    claims, they would prefer to continue to litigate the case before this Court.  Accordingly, the

10   Court will exercise supplemental jurisdiction over plaintiffs' remaining state law claims.

11   **H.     Statute of Limitations Issues Regarding State Law Claims.**

12          Defendants allege that all of plaintiffs' state law claims, except their claim for breach of a

13   written contract,[9] are time barred.  The majority of plaintiffs' state law claims have three-year

14   statutes of limitations.  See RCW 4.16.080 (three-year statute of limitations for claims based on

15   negligence, fraud, misrepresentation, conspiracy, and breach of oral contract); RCW

16   9A.82.100(7) (three-year statute of limitations under the Washington Criminal Profiteering Act);

17   RCW 21.20.430(4)(b) (three-year statute of limitations for Washington State Securities Act

18   claims); Hudson v. Condon, 101 Wn. App. 866, 873 (explaining that breach of fiduciary duty

19   claims are subject to a three-year statute of limitations); Goodman v. Goodman, 128 Wn.2d 366,

20   373 (1995) (explaining that a constructive trust claim has a three-year statute of limitations);

21   SPEEA v. Boeing Co., 139 Wn.2d 824, 847-38 (explaining that an unjust enrichment claim has a

22   three-year statute of limitations).  The claim for a violation of the CPA has a four-year statute of

23   limitations pursuant to RCW 19.86.120.  Plaintiffs do not dispute these limitations periods.

24   However, they contend that their claims are not time barred because they did not discover the

25

26          [9] Plaintiffs' claim of breach of a written contract has a six-year statute of limitations
     pursuant to RCW 4.16.040.

27

28

1    facts giving rise to the violations until years later.

2          Under Washington law, a statute of limitations begins to run when a plaintiff "discovers,

3    or in the exercise of reasonable diligence should have discovered the facts which give rise to his

4    or her cause of action." Johnson v. Reehoorn, 56 Wn. App. 692, 695 (1990) (internal citation

5    and quotation omitted).  Plaintiffs are not required to have notice of all of the relevant facts to

6    trigger the statute of limitations.  Instead,

7          The general rule in Washington is that when a plaintiff is placed on notice by some
           appreciable harm occasioned by another's wrongful conduct, the plaintiff must make
8          further diligent inquiry to ascertain the scope of the actual harm.  The plaintiff is charged
           with what a reasonable inquiry would have discovered.  One who has notice of facts
9          sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable
           inquiry would disclose.

10   Green v. A.P.C., 136 Wn.2d 87 (1998) (internal citations and quotation omitted).

11         Plaintiffs admit that they "were first alerted to the possibility of Defendants['] misconduct

12   during an audit of the Malone's [sic] 2001 tax return."  Amended Complaint at ¶ 164.  The same

13   paragraph goes on to state that in April and June 2005, the IRS issued summonses to two of the

14   defendants, both financial institutions, regarding the Malones.  However, plaintiffs actually had

15   notice even earlier.  In August 2003, the IRS issued a notice entitled "Common Trust Fund

16   Straddle Tax Shelter" (the "IRS notice") which stated that "the claimed tax benefits purportedly

17   generated by these transactions are not allowable for federal income tax purposes."  Amended

18   Complaint at ¶ 52.  That notice specifically disallowed the CTF shelter.  Malone was also

19   personally notified of the issue.  By letter dated December 22, 2003, CTF President Michael

20   Schwartz advised Malone to file an amended tax return and to retain an attorney.  Amended

21   Complaint at ¶ 161; Second Declaration of Michael Malone, (Dkt. #61) ("Second Malone

22   Decl."), Ex. 6 (the "CTF letter").  The CTF letter explained that the IRS notice stated "that the

23   IRS intended to challenge the tax benefits associated with" CTF, the transaction plaintiffs

24   "entered into in 2002."  The CTF letter further stated that some of Schwartz's clients were

25   currently under IRS investigation.  "This has led me to conclude that the IRS will shortly begin

26   an investigation of my company as well, ultimately requiring me to provide them with a list of

27

28   ORDER REGARDING
     MOTIONS TO DISMISS - 13

all clients that have entered into listed transactions.  As such it is almost certain that you will [be] audited at some time in 2004."  In addition, contrary to Clark Nuber's assertion that the Sidley Austin opinion letter would preclude penalties, the CTF letter explicitly stated, "The IRS recently has been taking the very aggressive position that tax opinions do not necessarily provide penalty protection on the basis that the taxpayer did not reasonably rely in good faith on the opinion."  Malone subsequently retained an attorney.

The CTF letter and the IRS notice put plaintiffs on notice of nearly all of the facts that defendants allegedly concealed from them and that give rise to their claims, including the fact that CTF lacked economic substance, that the IRS would not allow the deductions, that the IRS would audit plaintiffs, and that the Sidley Austin letter would not necessarily prevent the imposition of penalties.  In addition, by December 2003, plaintiffs had already paid at least a portion of defendants' fees, which they claim as part of their damages.  Amended Complaint at ¶ 290 ("Malone has suffered injury in his business and property in that he has paid Defendants [sic] fees and has incurred losses and interest in an amount to be proven at trial, but believed to be in excess of $2 million").

Plaintiffs argue that their claim for breach of the written contract is not time barred, which defendants concede.  They also contend that their claims are timely under the continuous representation rule because defendants continued to represent them.  The Amended Complaint does not contain that allegation, nor is it supported by the document plaintiffs cite.  Accordingly, plaintiffs' state law claims for negligence, breach of oral contract, fraud, misrepresentation, conspiracy, constructive trust, unjust enrichment, breach of fiduciary duty, and for violations of the Washington Criminal Profiteering Act are all time barred to the extent that they are based on theories that defendants misled them into believing that CTF had economic substance, that the related tax deductions would be allowed by the IRS, and that the Sidley Austin letter would prevent the imposition of penalties.  Plaintiffs may amend their claims to allege continuous representation.

ORDER REGARDING
MOTIONS TO DISMISS - 14

1     During oral argument, plaintiffs argued an additional theory of liability, that defendants

2    charged them interest and management fees on a loan that never existed, a point they did not

3    stress in their briefing or in the Amended Complaint.  Plaintiffs allege that they did not learn that

4    the loan was a sham until March 2007.  Defendants have not offered any evidence at this point

5    to counter that assertion.  Nor can the Court conclude as a matter of law that notice that the IRS

6    was disallowing the tax deductions constituted notice that the loan was sham.  It appears that

7    any claims based on the alleged sham nature of the loan would not be time barred.  Accordingly,

8    plaintiffs will be permitted to amend their complaint to clarify that theory.  However, they

9    cannot continue to allege wrongdoing generally by "all defendants."  Instead, they must specify

10    the alleged wrongdoing by each specific defendant, including which defendant, if any, was

11    responsible for the loan, made the misrepresentations about it, and charged the allegedly

12    wrongful fees.

**I.      Merits of the State Law Claims.**

14     Defendants argue that even if plaintiffs' state law claims are timely, they are subject to

15    dismissal on the merits.

**1.      Washington Criminal Profiteering Act.**

17     RCW 9A.82.010(12) provides that "it is a condition to civil liability under RCW

18    9A.82.100 that the defendant has been convicted in a criminal proceeding of fraud in the

19    purchase or sale of securities."  Plaintiffs concede that none of the moving defendants has been

20    convicted.  Nevertheless, they urge the Court to consider "whether the existence of a conspiracy

21    makes a fellow conspirator's conviction applicable to serve as a conviction for purposes of RCW

22    9A.82.010(12)."  Plaintiffs' Opposition at p. 20.  However, the statutory language is clear and

23    unambiguous, and the Court declines to expand it.  Plaintiffs request that the Court dismiss the

24    claim without prejudice so they can refile if a conviction is obtained in the future.  That request

25    is granted, and the criminal profiteering claim is dismissed without prejudice.

**2.      Washington Consumer Protection Act.**

1    A successful private CPA claim requires the establishment of the following elements: (1)

2    an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the

3    public interest; (4) that injures the plaintiff in his or her business or property; and (5) a causal

4    link between the unfair or deceptive act and the injury suffered.  Hangman Ridge Training

5    Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 2d 778 (1986).  In a factually similar case

6    involving a tax shelter, the Ninth Circuit affirmed the dismissal of a CPA claim because plaintiff

7    had failed to establish two of the necessary elements.  Swartz v. KPMG LLP, 476 F.3d 756 (9th

8    Cir. 2007) ("Swartz II") (affirming in relevant part Swartz v. KPMG, LLC, 401 F. Supp. 2d

9    1146 (2004) ("Swartz I")).  First, the trial court noted that an act or practice is "unfair or

10   deceptive" under the CPA only if it has the capacity to deceive "a substantial portion" of the

11   public.  Swartz I, 401 F. Supp. 2d at 1153 (quoting Henery v. Robinson, 67 Wn. App. 277, 289-

12   91 (1992)).  The trial court found:

13         The number of consumers who could conceivably find themselves in plaintiff's
           circumstances -- looking for a tax savings on millions of dollars of capital gains -- is
14         extremely small and unable to qualify as "a substantial portion of the public" under any
           reasonable definition of that term. As a matter of law, conduct directed toward a small
15         group cannot support a CPA claim.

16   Swartz I, 401 F. Supp. 2d at 1153-54.  Second, the trial court also found that the public interest

17   was not affected: "The tribulations of multimillionaires are not the focus of the legislative intent

18   behind the CPA; as a (very small) group, the extremely wealthy are neither unsophisticated nor

19   easily subject to chicanery."  Swartz I, 401 F. Supp. 2d at 1154.  The Ninth Circuit adopted the

20   trial court's opinion and affirmed dismissal of the CPA claim with prejudice because amendment

21   would be futile.  Swartz II, 476 F.3d at 761 ("We note that a scheme marketed to a 'select

22   audience' of persons with millions of dollars of capital gains to shield from taxation lacks the

23   capacity to deceive a substantial portion of the public").

24         Plaintiffs argue that Swartz is inapplicable and the public interest element is satisfied

25   because the Washington State Accountancy Act includes a specific declaration of public interest.

26

27

28   ORDER REGARDING
     MOTIONS TO DISMISS - 16

That contention was not raised in <u>Swartz</u>.[10]  However, in this case, plaintiffs did not plead a violation of the CPA based on the Washington Accountancy Act and any amendment to add such a claim would be futile.  The Washington Supreme Court emphasized in <u>Hangman</u> that "when a statute containing a legislative public interest pronouncement can be shown to have been violated, only the public interest requirement is satisfied per se.  The other four elements of a private CPA action must be separately established."  <u>Hangman</u>, 105 Wn. 2d at 791-92.  Therefore, even if plaintiffs alleged a claim based on the Washington Accountancy Act, they would still have to show that defendants' conduct had the capacity to deceive "a substantial portion" of the public.  For the reasons set forth in <u>Swartz</u>, they cannot do so.[11]

Plaintiffs contend that the <u>Swartz</u> courts "did not consider evidence of whether the unfair and deceptive promotion of illegal tax schemes is limited to millionaires."  Plaintiffs' Opposition at p. 8 (citing other tax shelter schemes such as the "Slavery Reparations Credit").  The Court, however, must focus on this particular tax shelter, not on the multitude of other shelters and schemes that no doubt exist.

Finally, plaintiffs argued during oral argument that defendants' acts of charging them interest and fees for a loan that did not exist violated the CPA.  That claim is not in plaintiffs' Amended Complaint.  Any such amendment would be futile because plaintiffs cannot meet the

---

[10] Similarly, plaintiffs argue that the <u>Swartz</u> courts did not consider a subsequently issued report by a Senate subcommittee regarding KPMG's and other professional entities' roles in actively promoting abusive tax shelters.  The report, however, did not address the moving defendants other than the HVB entities.

[11] In addition, although the Amended Complaint alleges that defendants marketed CTF to other customers, it does not allege that any of defendants' other clients were deceived or participated in CTF.  <u>See, e.g.</u>, <u>Burns</u>, 135 Wn. App. at 302 (dismissing CPA claim where plaintiff's accountant overcharged him, but there was no evidence that his other clients were deceived or that they had a similar relationship with him that facilitated the overcharges); <u>Segal Co., Inc. v. Amazon.com</u>, 280 F. Supp. 2d 1229, 1232-33 (W.D. Wash. 2003).  The lack of those allegations further undermines plaintiffs' claims that defendants' conduct had the capacity to deceive a substantial portion of the public.

ORDER REGARDING
MOTIONS TO DISMISS - 17

1   required public interest element.  The scheme, regardless of whether one focuses on the loan or

2   some other aspect, lacks the capacity to deceive a substantial portion of the public.  For these

3   reasons, plaintiffs' CPA claim must be dismissed with prejudice.

4           **3.      Breach of Contract.**

5           Plaintiffs allege that defendants "entered into oral and written contracts to provide

6   Plaintiffs with professionally competent . . . services, to exercise the reasonable standard of care,

7   loyalty and honesty, and to comply with all applicable rules of professional responsibility and

8   industry standards and regulations."  Amended Complaint at ¶ 286.  They also contend that

9   defendants provided them "with advice that these Defendants either knew or should have known

10  to be wrong and illegal" and breached their duty of good faith and fair dealing by withholding

11  information, among other things.  Id. at ¶¶ 288-289.  As an initial matter, plaintiffs' allegation of

12  breach of the duty of good faith and fair dealing is too general and conclusory to state a claim

13  under Twombly.  Instead, plaintiffs allege a laundry list of allegations against all defendants

14  without tying any of the allegations to specific defendants.  Id. at ¶ 289.  Similarly, plaintiffs'

15  claim for breach of an oral contract fails because they have not identified any actionable oral

16  contract or oral promises defendants made to them.[12]  Instead, the Amended Complaint broadly

17  and vaguely alleges that "Defendants" breached contracts with them.  Amended Complaint at ¶¶

18  286-288.  Therefore, plaintiffs' claims for breach of an oral contract and breach of the duty of

19  good faith and fair dealing are dismissed with leave to amend.

20          In addition, defendants argue that the claims for breach of a written contract must be

21  dismissed because the claim duplicates the professional negligence claim and defendants

22  "promised no specific result at all."  Swartz I, 401 F. Supp. 2d at 1154.  This argument has

23  merit.  With the exception of Clark Nuber, plaintiffs have not alleged any specific promises by

24

25          [12] The Amended Complaint alleges that Clark Nuber made an oral promise to provide tax
26  advice.  Of course, they did provide tax advice, so that promise was not breached.  Because they
    did not orally promise specific results, the claim fails under Swartz.
27

28  ORDER REGARDING
    MOTIONS TO DISMISS - 18

any of the moving defendants.  For example, plaintiffs allege that A&D breached their contract by failing to adequately review the transaction documents and failing to provide sound professional advice, but those claims merely duplicate a professional negligence claim.  The failure to identify specific promises dooms plaintiffs' breach of contract claim against the other moving defendants.  Nor can plaintiffs save their inadequate pleading by asserting allegations in their memoranda that do not appear in their complaint.[13]

However, Clark Nuber specifically promised plaintiffs that the Sidley Austin letter "will prevent the imposition of [IRS] penalties," when in fact, it did not.  First Malone Decl., Ex. 1.  Clark Nuber counters that it informed plaintiffs in the engagement letter that it would take "no responsibility [for the] consequences of the investment."  Engagement Letter at p. 1.  The letter is not integrated, and Clark Nuber had already provided advice that they did not subsequently disavow.  Therefore, the breach of contract claim against Clark Nuber is not subject to dismissal as a matter of law at this stage in the litigation.  The Court dismisses the breach of contract claim against the other moving defendants with leave to amend.

### 4.    Breach of Fiduciary Duty.

Defendants argue that plaintiffs' breach of fiduciary duty claim must be dismissed because the parties dealt with each other at arms length, and no fiduciary relationship existed.  However, plaintiffs allege that Sedlock, Ahrens, and A&D acted as their attorneys.  "A fiduciary relationship arises as a matter of law between an attorney and his client."  Liebergesell v. Evans, 93 Wn.2d 881, 890 (1980).   The Amended Complaint alleges that although A&D purported to provide neutral legal advice to Malone, they were actually promoters and participants in CTF, which they concealed from Malone.  Amended Complaint at ¶ 85.  Those allegations are sufficient to state a claim against A&D.

---

[13] For example, plaintiffs allege that Enterprise breached a contract with Malone by "explicitly contracting to serve as fiduciary" but failing to do so, and by failing to set up CTF to comply with applicable law.  Plaintiffs' Response at p. 6.  Those allegations do not appear in the Amended Complaint.

ORDER REGARDING
MOTIONS TO DISMISS - 19

1    In addition, the Amended Complaint describes the MNS defendants as investment

2 advisors, and investment advisors are fiduciaries.  See, e.g., SEC v. Capital Gains Research

3 Bureau, 375 U.S. 180, 194 (1963) (recognizing that financial advisers are fiduciaries with a duty

4 to disclose material facts).  Plaintiffs allege that the MNS defendants, "acting through Clark

5 Nuber, solicited Malone to investment [sic] in the Fund," Amended Complaint at ¶ 106, even

6 though they knew that the loan was a sham and that CTF lacked economic substance.  These

7 allegations are sufficient to state a claim for breach of fiduciary duty against the MNS

8 defendants.  See, e.g., Tokarz v. Frontier Fed. Sav. & Loan Ass'n, 33 Wn. App. 456, 459 (1982)

9 (explaining that "one who speaks must say enough to prevent his words from misleading the

10 other party; one who has special knowledge of material facts to which the other party does not

11 have access may have a duty to disclose these facts to the other party; and one who stands in a

12 confidential or fiduciary relation to the other party to a transaction must disclose material

13 facts").

14    As for Clark Nuber, the Court considers whether it and Malone had a relationship that

15 "allows an individual to relax his guard and repose his trust in another."  Liebergesell, 93 Wn.2d

16 at 889 (quoting Restatement of Contracts § 472(1)(c) (1932), which describes a fiduciary

17 relationship as one in which one party "occupies such a relation to the other party as to justify

18 the latter in expecting that his interests will be cared for").  Comment c to the Restatement

19 explains, "A fiduciary position . . . includes not only the position of one who is a trustee,

20 executor, administrator, or the like, but that of agent, attorney, trusted business advisor, and

21 indeed any person whose relation with another is such that the latter justifiably expects his

22 welfare to be cared for by the former").  Plaintiffs allege that Clark Nuber was the Malones'

23 trusted tax advisor for ten years, which is sufficient at this stage to bring the claim within the

24 ambit of the Restatement.  In contrast, in Swartz, there was no evidence that the plaintiff had any

25 pre-existing relationship with the accounting firm.  401 F. Supp. 2d at 1156 (explaining that

26 plaintiff was referred to the accounting firm by his broker).  Clark Nuber argues that no

27

28   ORDER REGARDING
     MOTIONS TO DISMISS - 20

fiduciary relationship existed because they expressly warned plaintiffs of the potential pitfalls of CTF and informed plaintiffs that they would not verify facts represented by the promoters.  The engagement letter stated that an attorney would advise plaintiffs on the legal aspects of the transaction so "Clark Nuber takes no responsibility therefore for the legal advice or consequences of the investment.  Specifically, the legal viability of the 'insurance' contract has been approved by Mr. Ahrens."  Second Malone Decl. Ex. 2.  A party may contractually limit its participation and disclaim any special relationship.  Tokarz, 33 Wn. App. at 462-63.  However, the import of the disclaimer is unclear at this time.  Also, Clark Nuber did opine on the tax and legal consequences of the investment by opining that the Sidley Austin letter "will prevent the imposition of penalties in the event of a successful IRS challenge."  First Malone Decl., Ex. 1.

Plaintiffs allege that Clark Nuber knew that CTF was an abusive tax shelter, lacked economic substance, was unlikely to make money, and would be disallowed by the IRS.  Amended Complaint at ¶¶ 46.  Nevertheless, plaintiffs contend that Clark Nuber used its position of trust to actively promote the shelter and prepared and signed a tax return claiming losses from CTF, which led to plaintiffs' IRS penalties.  Id. at ¶¶ 43, 75, 99-102, 199.  Certainly, discovery may reveal that defendants did not actively promote CTF or know of its pitfalls.  At this stage in the proceedings, however, these allegations are sufficient to state a claim for breach of fiduciary duty against Clark Nuber.

However, plaintiffs have not alleged any facts to show that Enterprise was a fiduciary.[14] Nor have they cited any authority to show that a bank that acts as the trustee for a common fund is a fiduciary.  Therefore, the breach of fiduciary duty claim against Enterprise is dismissed.

Plaintiffs also contend that defendants aided and abetted other defendants' breach of fiduciary duties.  In Washington, "a person who knowingly assists another in the commission of a tort, or who knowingly assists another in violating his fiduciary or trust obligation, is liable for

---

[14] In their memorandum, plaintiffs allege that Enterprise "explicitly contracted to serve as a fiduciary."  Plaintiffs' Opposition at p. 6.  That allegation is not in the Amended Complaint.

ORDER REGARDING
MOTIONS TO DISMISS - 21

losses proximately caused thereby." LaHue v. Keystone Investment Co., 6 Wn. App. 765, 783 (1972). Plaintiffs contend that defendants conspired with Clark Nuber to conceal and misrepresent facts regarding the investment. Amended Complaint at ¶ 211. The Amended Complaint also contains numerous allegations that the defendants were aware of and actively participated in the scheme. Although the allegations on this issue are sparse, they are sufficient to withstand the motion. Therefore, to the extent the claims are not time barred, plaintiffs may pursue claims against all defendants for aiding and abetting a breach of fiduciary duty, and a claim for breach of fiduciary duty against Clark Nuber, A&D, and the MNS defendants.

### 5. Constructive Trust and Unjust Enrichment.

Equity allows a court to impose a constructive trust in favor of a party, who may reclaim his or her property from one that used fraud, misrepresentation, or other similar wrongdoing to acquire it. See, e.g., Bangasser & Assoc., Inc. v. Hedges, 58 Wn.2d 514, 516-17 (1961). Under Washington law, constructive trust is an equitable remedy imposed by the court at law, principally to prevent unjust enrichment. See, e.g., Thor v. McDearmid, 63 Wn. App. 193, 207 (1991). Defendants argue that constructive trust is a remedy, not a cause of action. Plaintiffs have not responded to that argument. Nor has the Court found any authority that would permit plaintiffs to assert an equitable remedy as a cause of action. Accordingly, plaintiffs' constructive trust claim against all defendants is dismissed.

Plaintiffs also allege that all defendants unjustly enriched themselves by "[c]harging and collecting unreasonable, excessive, and unethical fees." Amended Complaint at ¶ 186(c). They also accuse Clark Nuber of "maximizing the fees they could earn through the CTF transaction, at the expense of Plaintiffs." Id. at ¶ 200(d). However, in their briefing, plaintiffs appear to have abandoned those allegations and now allege that defendants charged fees for services that essentially had no value. That allegation, however, is not in plaintiffs' Amended Complaint.

Moreover, plaintiffs had written contracts with the defendants, and a party to an express contract may not bring an action under a theory of an implied contract relating to the same

ORDER REGARDING
MOTIONS TO DISMISS - 22

1   matter.  Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604-05 (1943).  The Amended

2   Complaint does not identify any implied contract with any of the defendants.  Accordingly,

3   plaintiffs's unjust enrichment claim is dismissed with leave to provide amendments that cure

4   these deficiencies.

5         **6.      Washington State Securities Act.**

6         Defendants argue that plaintiffs' WSSA claim is inadequately pled, and the Court agrees.

7   The Amended Complaint alleges a series of actions, misstatements, and material omissions by

8   "defendants" without specifying the wrongdoing of each individual defendant.  Although the

9   claims are deficient, the Court grants plaintiffs leave to amend rather than dismissing the claim

10  with prejudice for the following reasons.

11        First, Enterprise and A&D did not move to dismiss plaintiffs' WSSA claim on the merits.

12  Second, Clark Nuber argues that plaintiffs' WSSA claim is time barred.  However, plaintiffs

13  allege that they learned for the first time that the loan was a sham in March 2007.  Amended

14  Complaint at ¶ 167.  In addition, none of the defendants disputes that unlike under federal law,

15  the loan may be a security under Washington law.  Accordingly, the WSSA claim appears

16  timely.

17        Third, the MNS defendants argue that plaintiffs' WSSA claim fails because they cannot

18  show the required reasonable reliance.  See, e.g., Stewart v. Estate of Steiner, 122 Wn. App.

19  258, 264 (2004) (explaining that WSSA plaintiffs must show that the defendant made material

20  misrepresentations or omitted material facts about the security and that the purchaser relied on

21  those misrepresentations or omissions).  The CTF subscription agreements, signed by Malone,

22  contain declarations that the investor "has not received from, nor has the Investor relied upon,

23  Coastal . . . or any of their affiliates, agents or employees for any tax advice or any tax opinion

24  with respect to an investment in the Program."  Declaration of Michael Schwartz, (Dkt. #73),

25  Ex. 1.  The MNS defendants argue that this case is factually similar to Stewart v. Estate of

26  Steiner, in which the investor signed a subscription agreement with a similar nonreliance

27

28  ORDER REGARDING
    MOTIONS TO DISMISS - 23

provision.  However, the <u>Stewart</u> court dismissed the claim on a motion for summary judgment, not a Rule 12(b)(6) motion.  In addition, the court explained that "the fact that one signs a nonreliance provision in a subscription agreement is not necessarily dispositive" of the issue of reasonable reliance.  <u>Stewart</u>, 122 Wn. App. at 274.  Rather, a court must consider several factors including:

> (1) the sophistication and expertise of the plaintiff in financial and securities matters, (2) the existence of longstanding business or personal relationships, (3) access to the relevant information, (4) the existence of a fiduciary relationship, (5) concealment of the fraud, (6) the opportunity to detect the fraud, (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction, and (8) the generality or specificity of the misrepresentations.

<u>Id.</u>  At this point, the record is insufficiently developed to evaluate these factors or to determine as a matter of law that plaintiffs' reliance was not reasonable.

Clark Nuber also moved to dismiss the WSSA claim regarding "controlling person" liability under RCW 21.20.430(3).  Plaintiffs did not respond to that argument.  Therefore, plaintiffs' claim under the WSSA based on controlling person liability is dismissed.  Otherwise, plaintiffs are granted leave to amend the claim.

**7.     Fraud, Misrepresentation, and Civil Conspiracy.**

The moving defendants argue that plaintiffs' allegations do not meet the requirements of Rule 9.  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003).  A claim for conspiracy to commit fraud is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  <u>Id.</u>  Rule 9(b) requires that plaintiffs allege "the who, what, when, where, and how" of the misconduct alleged.  <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997).  They also argue that even if the claims are sufficiently pled, they fail as a matter of law.

**a.     Clark Nuber.**

Plaintiffs allege that Clark Nuber made affirmative misrepresentations including (1) stating in the Memorandum that there was a better than 60% chance that the IRS would uphold

the deductions, when, according to plaintiffs, Clark Nuber knew that CTF lacked economic

substance, (2) stating that the Sidley Austin letter would prevent the imposition of penalties, and

(3) preparing and signing a tax return for the Malones knowing that the representations regarding

CTF were false.  Amended Complaint at ¶¶ 81, 82, 89.  Knowledge and "other conditions of a

person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  These allegations are sufficient

to state claims for fraud and misrepresentation against Clark Nuber.

Clark Nuber argues that plaintiffs did not adequately plead the necessary justifiable

reliance because of the disclaimers in the 2001 engagement letter.  "Whether a party justifiably

relied upon a misrepresentation is an issue of fact."  Swartz II, 476 F.3d at 761 (internal citation

and quotation omitted).  Reliance is justified only when it is "reasonable under the surrounding

circumstances."  ESCA Corp. v. KPMG Peat Marwick, 135 Wn.2d 820, 824 (1998).  In this

case, plaintiffs have adequately pled reliance.  Whether the disclaimers are effective, particularly

in light of the representations in the Memorandum, is a question more appropriately resolved at a

later stage in the proceedings.  Clark Nuber also argues that it had no duty to disclose obvious

risks to plaintiffs.  Certainly, plaintiffs may ultimately have a high hurdle to overcome to show

that they justifiably relied on representations describing an obviously risky tax shelter.[15]

However, Clark Nuber has not shown that, as a matter of law, it was obvious that CTF lacked

economic substance or that the Sidley Austin letter would not ward off the imposition of

penalties, particularly when Clark Nuber made contradictory representations.  Therefore, the

Court will not dismiss the fraud and misrepresentation claims against Clark Nuber.

### b.    The Other Moving Defendants.

The Amended Complaint fails to set forth any false statements by the other moving

defendants.  Nor does it explain their roles in the allegedly fraudulent scheme with particularity.

---

[15] Similarly, the MNS defendants argue that plaintiffs cannot show the necessary reliance because of the disclaimers contained in the signed subscription agreements.  As set forth more fully above regarding the WSSA claim, a determination that plaintiffs' reliance was unreasonable as a matter of law would be premature.

ORDER REGARDING
MOTIONS TO DISMISS - 25

1    Instead, the Amended Complaint repeatedly refers to actions, misrepresentations and omissions

2    by "defendants," even when the allegations could not plausibly refer to all defendants.  The

3    pleading requirement cannot be met by general allegations concerning all defendants.  <u>Swartz II</u>,

4    476 F.3d at 764-65 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants

5    together but requires plaintiffs to differentiate their allegations when suing more than one

6    defendant and inform each defendant separately of the allegations surrounding his alleged

7    participation in the fraud").  Similarly, regarding plaintiffs' conspiracy claim, conclusory

8    allegations without factual support are insufficient to state a conspiracy claim.  <u>Swartz II</u>, 476

9    F.3d at 765.  During oral argument, plaintiffs appeared to concede that their fraud,

10   misrepresentation, and conspiracy claims were deficient and requested leave to amend.  That

11   request is granted.

12   **J.   Damages.**

13        Clark Nuber requests that, with the exception of plaintiffs' claims for actual damages

14   based on a tax penalty, plaintiffs' damages claims be stricken as untenable.  Plaintiffs' claims for

15   treble damages and attorney's fees are stricken because their CPA and Criminal Profiteering

16   claims have been dismissed, and none of their remaining claims provides for treble damages or

17   fees.  Plaintiffs are not entitled to recover the amount they paid in back taxes, or the loss of the

18   value of whatever benefit they may have received from CTF.  <u>Swartz I</u>, 401 F. Supp. 2d at 1155

19   n.2.  Similarly, Washington follows "the majority of jurisdictions holding that interest owed to

20   the IRS is not recoverable" from defendants.  <u>Leendertsen v. Price Waterhouse</u>, 81 Wn. App.

21   762, 768 (1996).  Accordingly, plaintiffs' request to recover the amount they paid in back taxes

22   or interest is also stricken.  However, the Court will not otherwise strike plaintiffs' claim for

23   other damages, including the amount of fees and interest they paid on a loan that allegedly never

24   existed and fees for services that had no value.

25        Plaintiffs also request damages for "emotional and mental suffering, anxiety and

26   distress."  However, their Amended Complaint does not set forth the basis of those damages.

27

28   ORDER REGARDING
     MOTIONS TO DISMISS - 26

1   Accordingly, plaintiffs may amend their complaint to assert those allegations.  Otherwise, their

2   claim for emotional distress damages will be dismissed.

3          Finally, plaintiffs request rescission and restitution.  Clark Nuber requests that those

4   claims be stricken because plaintiffs have not stated claims for unjust enrichment and

5   constructive trust.  However, the Court has granted plaintiffs leave to amend their claim for

6   unjust enrichment, so dismissal of the equitable remedies would be premature.  In addition, the

7   Amended Complaint generally requests rescission of "all agreements entered into with

8   Defendants pertaining to any of the [tax shelter] transactions."  Amended Complaint at ¶¶ 301-

9   02.  That allegation is impermissibly vague.  Plaintiffs may amend their complaint to specify the

10  alleged agreements and with whom they were made.  Otherwise, their rescission claim will be

11  dismissed.

12                                **III.  CONCLUSION**

13         For all of the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

14  Clark Nuber's motion to dismiss (Dkt. #9), Ahrens & DeAngeli's motion to dismiss (Dkt. #10),

15  Enterprise's motion to dismiss (Dkt. #21), and the MNS defendants' motion to dismiss (Dkt.

16  #72).  The Court GRANTS the HVB entities' motion to dismiss (Dkt. #79), dismisses the claims

17  against HVB-AG for lack of personal jurisdiction, and dismisses the claims against HVB-NY

18  and HVB-Finance for improper venue.  The Court dismisses with prejudice plaintiffs' claims for

19  federal securities violations, violations of the IAA, and their Consumer Protection Act claims, as

20  well as the claims brought by the Belmar plaintiffs.  As set forth above, the Court dismisses

21  additional claims without prejudice with leave to amend.

22         Plaintiffs are granted leave to file a second amended complaint within thirty days of this

23  order that remedies the deficiencies set forth above.  The amendments must specify each

24  defendant's allegedly wrongful conduct rather than referring to "defendants" collectively.

25  Because the complaint is unusually lengthy, any changes must be designated in bold type.  The

26  second amended complaint shall not include any of the causes of action that the Court has

27

28  ORDER REGARDING
    MOTIONS TO DISMISS - 27

1    dismissed with prejudice.

2        In addition, in any further motions, the defendants must not simply join or adopt

3    arguments made by other defendants (including filing notices "joining" in the briefing of another

4    defendant).  Instead, each defendant must state fully the grounds on which it is moving in its

5    own memorandum.

6        Finally, the parties have notified the Court that plaintiffs have settled their claims against

7    Sidley Austin.  Accordingly, the Clerk of the Court shall remove Sidley Austin's motion to

8    dismiss (Dkt. #25) from the Court's motions calendar.  The parties are reminded that Sidley

9    Austin remains a party in this matter until the parties file a stipulation and proposed order of

10   dismissal and an order of dismissal is signed by the Court.

11

12       DATED this 23rd day of June, 2008.

13

14                                    _MNP S Lasnik_
                                      _____
15                                    Robert S. Lasnik
                                      United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER REGARDING
     MOTIONS TO DISMISS - 28