1

2                                        THE HONORABLE ROBERT S. LASNIK

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT FOR THE
10                      WESTERN DISTRICT OF WASHINGTON

11

| | |
|---|---|
| MICHAEL MALONE AND BARBARA MALONE, husband and wife,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CLARK NUBER, P.S., a Washington Corporation; THOMAS JOSEPH SEDLOCK, an individual; JIM DUBECK, an individual; AHRENS & DE ANGELI, P.L.L.C.; a Washington Limited Liability Company; EDWARD AHRENS, an individual; ENTERPRISE FINANCIAL SERVICES, INC., F/K/A ENTERPRISE BANK, a Missouri Corporation; COASTAL TRADING LLC, a Delaware Limited Liability Company; MICHAEL N. SCHWARTZ, an individual; DAVID A. SCHWARTZ, and individual; KEVIN M. KOPS, an individual; RON DIRUSSO, an individual; and DOES 1 through 50, Defendants. | *Case No.  C07-2046 RSL*<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS MULTI NATIONAL STRATEGIES, LLC, COASTAL TRADING, LLC, MICHAEL N. SCHWARTZ AND DAVID A. SCHWARTZ' ("MNS DEFENDANTS") MOTION TO DISMISS SECOND AMENDED COMPLAINT<br><br>**NOTE FOR HEARING:**<br>**November 21, 2008** |

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 1

In the Court's Order dated June 23, 2008, (Dkt. #118), the Court sustained the claims against MultiNational Strategies, LLC, Coastal Trading LLC, Michael N. Schwartz, and David Schwartz (collectively the "MNS defendants") for Breach of Fiduciary Duty, (Dkt. #118, p.20); and Aiding and Abetting Breach of Fiduciary Duty, to the extent that these claims are not time barred.  (Dkt. #118, p.22)

The Court dismissed claims for violations of the Securities Exchange Act of 1933, (Dkt. #118, p.9); the Securities Exchange Act of 1934, (Dkt. #118, p.9); the Investment Advisers Act of 1940, (Dkt. 118, p.9-10); and the Washington Consumer Protection Act, (Dkt. 118, p. 16).  Plaintiffs did not attempt to reassert these claims in the SAC; these claims were not specifically deleted from the SAC because the Court specified that "any changes must be designated in bold type." (Dkt. 118, p.27).

The Court dismissed without prejudice claims for violation of the Washington Criminal Profiteering Act, (Dkt. 118, p.15); and Constructive Trust.  (Dkt. 118, p.22).  The Court held that the breach of written contract claims were not time barred.  (Dkt. 118, p.14).

The Court granted leave to amend as against the MNS defendants to plead the continuing representation rule as to plaintiff's state law claims of negligence, breach of oral contract, fraud, misrepresentation, constructive trust, unjust enrichment, breach of fiduciary duty to the extent that they are based on theories that defendants misled them into believing that CTF had economic substance.  (Dkt. 118, p.14).  The Court also granted leave to amend and clarify their theory that Defendants charged them interest and management fees on a loan that never existed.  (Dkt. 118, p.14).

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT - 2

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE:  (206) 448-1011
FACSIMILE:  (206) 448-1022

Moreover, the Court granted leave to amend their complaint to cure any deficiencies as to claims for Breach of Written Contract, (Dkt. #118, p. 19); Breach of Oral Contract, (Dkt. #118, p. 18); Breach of Duty of Good Faith and Fair Dealing, (Dkt. #118, p. 18); Violation of the Washington State Securities Act, (Dkt. #118, p. 23); Fraud, (Dkt. #118, p. 26); Misrepresentation, (Dkt. #118, p. 26); Conspiracy, (Dkt. #118, p. 26); and Unjust Enrichment, (Dkt. #118, p. 27).

On September 2, 2008, the MNS defendants brought a Motion to Dismiss all or part of Plaintiffs' Second Amended Complaint ("SAC") (1) pursuant to Fed. R. Civ.P. 12(b)(2) for lack of personal jurisdiction; (2) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted; and (3) pursuant to Fed. R. Civ. P. 9(b) for failure to plead their fraud related claims with particularity.  The MNS Defendants Motion should be denied for the reasons stated herein.

## ARGUMENT

### A.    Standard of Review

Dismissal for failure to state a claim is proper only if it appears beyond doubt the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).  The issue is not whether a plaintiff's success on the merits is likely, but whether the plaintiff is entitled to proceed beyond the threshold in attempting to establish his or her claims.  *De La Cruz v. Tormey*, 582 F.2d at 48.  This Court must read the complaint charitably, take all well-pleaded facts as true, assume all general allegations, and embrace whatever specific facts might be necessary to support them.  *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1995).  All allegations in the complaint must be construed in a light most favorable to the Plaintiff.  *Jackson v. Birmingham Board of Educ.*, U.S.125 S.Ct. 1497, 1502-03, 161 L. Ed. 2d 361 (2005).

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 3

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

**B.    The Second Amended Complaint Made a Prima Facie Showing of Personal Jurisdiction over the MNS Defendants**

The allegations within the SAC made a prima facie showing of personal jurisdiction and are therefore sufficient to withstand a motion to dismiss. *Doe v. Unocal*, 248 F.3d at 922; *Alperin v. Vatican Bank*, 410 F.3d at 539 n.1. On review of a motion to dismiss for lack of personal jurisdiction, the Court must take the allegations of the complaint as true. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cr. 2002). At the motion to dismiss stage, only make a prima facie showing of personal jurisdiction is required because the parties have not yet conducted discovery. *Alperin v. Vatican Bank*, 410 F.3d 532, 539 n.1 (9thCir. 2005). Accordingly, the plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant. *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001).

Under the long-arm statute, a Washington court may exercise personal jurisdiction over a foreign entity, either for transaction of business in this state or commission of a tortious act in this state when (1) the non-resident defendant purposefully commits some action or consummates some transaction in the forum state; (2) the cause of action arises from, or is connected with such act or transaction; and (3) the assumption of jurisdiction by the forum state does not offend traditional notions of fair play and substantial justice. *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 767, 783 P.2d 78 (1989). Washington's long arm statute has been interpreted to permit the assertion of jurisdiction to the extent permitted by federal due process. *Deutsch v. West Coast Machine Co.*, 80 Wn.2d 707, 711, 497 P.2d 1311 (1972). Thus, the statutory and constitutional standards merge into a single due process test. *Pedersen Fisheries, Inc. v. Patti Indus., Inc.*, 563 F.Supp. 72, 74 (W.D. Wa. 1983).

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 4

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

The "purposeful availment" requirement is satisfied if the defendant is alleged to have taken deliberate action directed toward the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The "arising out of" requirement is met if the plaintiff shows that he or she would not have been injured but for the defendant's contacts with the forum. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th cir. 2002). Under this "but for" test, where one party acts as an agent for another, that party's acts are relevant to the inquiry. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir.2001). Thus, a court has personal jurisdiction over a defendant if the defendant has minimum contacts with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.95 (1945).

To satisfy the "purposeful availment" requirement, a complaint must show the defendant has taken deliberate action within the forum state. *Ballard, 65 F.3d at 1498.* It is not necessary for the defendant to be physically present or have physical contacts with the forum, as long as the defendant's efforts are purposefully directed toward forum residents. *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th cir. 1986).

Contrary to the MNS defendant's contentions, Malone's SAC does not contain only "conclusory" allegations regarding the purposeful availment requirement. It is a notice pleading.[1] Malone has sufficiently pled facts that Washington's long-arm statute confers jurisdiction over the MNS Defendant and that the exercise of jurisdiction accords with the principles of the due process.

To withstand a Motion to Dismiss on Personal Jurisdiction grounds, Malone need only demonstrate facts that, if true, would support jurisdiction over the defendant. *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001). Malone pled the following that, if taken as true, would confer specific jurisdiction upon the MNS Defendants. Malone is a Washington resident. (Dkt. #132, ¶10). Clark

---

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 5

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

Nuber is a Washington corporation.  (Dkt. #132, ¶11).   Multi National Strategies, Coastal Trading LLC, Michael Schwartz, and David Schwartz purposefully directed their activities toward Malone in Washington.  (Dkt. #132, ¶ 2).

From September to November of 2001, Multi National Strategies, LLC, Michael Schwartz, and David Schwartz solicited Ahrens & DeAngeli, PLLC, Edward Ahrens, Clark Nuber, Tom Sedlock, and Jim Dubeck to identify high net worth individuals in Washington State to invest in the Coastal Trading Common Trust Fund Investment Program.  (Dkt. #132, ¶ 231 and ¶ 254). Multi National Strategies, LLC, Michael Schwartz, and David Schwartz offered Ahrens & DeAngeli, PLLC, Edward Ahrens, Clark Nuber, Sedlock, and Dubeck an economic benefit if they could persuade Malone to invest in the Coastal Trading Common Trust Fund.  Upon information and belief, Ahrens & DeAngeli, PLLC, Edward Ahrens Clark Nuber, Sedlock, and Dubeck accepted such offer.  (Dkt. #132, ¶ 232).  Clark Nuber, Sedlock, and Dubeck became an agent for Multi National Strategies, LLC, Michael Schwartz, and David Schwartz, while purporting to represent Malone as a fiduciary.  (Dkt. #132, ¶ 233).

Multi National Strategies LLC, Michael Schwartz, and David Schwartz directed their actions at Plaintiffs in Washington State and thereby purposefully availed themselves to the State of Washington.  The MNS Defendants solicited Clark Nuber, Sedlock, and Dubeck to act in the role of a dual agency because they knew that Clark Nuber, Sedlock, and Dubeck also represented Plaintiff Malone and would be influential in persuading Malone to invest in the Coastal Trading Common Trust Fund Program Series III and Series IV, hereinafter referred to as "CTF," as an investment in a security.  Multi National Strategies LLC, Michael Schwartz, and David Schwartz used Clark Nuber,

---

[1] Malone has not been allowed discovery related to jurisdiction.

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 6

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE:  (206) 448-1011
FACSIMILE:  (206) 448-1022

Sedlock and Dubeck as their agents, intermediaries, and spokespersons; and they acted with the intent and knowledge that their actions would be directed into Washington State and that their actions would be directed toward Malone, a Washington State resident.  Clark Nuber, Sedlock and Dubeck were offered and accepted a fee for its role as an agent to the MNS Defendants.  In a letter dated November 13, 2001, Clark Nuber indicated that it had earned a fee consisting of 1% of the transaction amount.  (Dkt. #132, ¶256).

Multi National Strategies, LLC, Michael Schwartz, and David Schwartz further directed their actions to Washington State by representing through Clark Nuber that they would be responsible for reducing Malone's  risk of  loss in the event that Malone were to invest in the CTF.  Multi National Strategies, LLC, Michael Schwartz, and David Schwartz instructed and conferred with Clark Nuber, Sedlock, and Dubeck regarding material misrepresentations that would later be contained in a memorandum sent to Plaintiff Malone.  (Dkt. #132, ¶ 236).

Coastal Trading, LLC, Michael Schwartz, and David Schwartz further purposefully availed itself to Washington State by assisting Clark Nuber, Sedlock, and Dubeck in the preparation of a memorandum dated October 31, 2001.  (Dkt. #132, ¶ 257).   This memorandum misrepresented the CTF transactions and contained material misrepresentations, which Coastal Trading, LLC, Michael Schwartz, and David Schwartz had actual knowledge of its falsity.  (Dkt. # 132, ¶ 236).  Clark Nuber acting as agent on behalf of the MNS Defendants mailed the memorandum to Plaintiffs at their Seattle, Washington address. (Dkt. #132, ¶4).  The purpose of the memorandum was to persuade Plaintiffs to invest in the CTF.  (Dkt. #132, ¶4)   These false assertions were intended to and did persuade Malone to invest $1,712,500 in the CTF.  (Dkt. #132, ¶128).  Plaintiffs would not have invested in the CTF if he had known that these representations were false.  (Dkt. #132, ¶100).

1    Furthermore, Coastal Trading, LLC, Michael Schwartz, and David Schwartz deliberate

2    engaged in significant activities within Washington State by contacting Washington residents

3    directly or through agents on many occasions.  For examples of direct and indirect contacts and

4    solicitations pleas see Dkt. #132, ¶ 258; Dkt. #132-5; Dkt. #132-7; Dkt.#132-10 through Dkt. #132-

5    15; Dkt. #132-35; and Dkt. #132-36.

6        While the MNS Defendants have cited to a 9th Circuit case, which applied the California

7    long arm statute to claim that the "use of mails, telephone, or other international communications

8    simply do not qualify as purposeful activity."  *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.

9    1985).  Washington Courts, however, have held that personal jurisdiction existed when an out-of-

10   state solicitor purposefully availed themselves to the privileges of conducting their activities in

11   Washington State, when he utilized the telephone and e-mail to solicit investment dollars in

12   Washington and plaintiff's claims arose out of or resulted from those activities. *Silver Valley*

13   *Partners., LLC v. De Motte, 400 F. Supp. 2d 1262 (2005).*  It is insignificant that the solicitor did not

14   travel to Washington to meet with plaintiffs, or that the investments were personally delivered to the

15   solicitor in Idaho. *Id.  See Also Kreidler v. U.S.*, 2006 U.S. Dist. LEXIS 88702 (2006).

16       Plaintiffs' allegations, if taken as true, establish that the MNS Defendants deliberately

17   directed its activities toward Malone and purposefully availed itself to the State of Washington.

18   Furthermore, the MNS Defendants act of negotiating and consummating an investment of $1.7

19   million in the CTF with Malone is a purposeful contact sufficient to satisfy the minimum contacts

20   test. *See* (Dkt. #132, ¶253);  *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 415 (9th

21   Cir. 1977) (A loan of funds by a Liechtenstein corporation to its Nevada subsidiary was sufficient to

22   show minimum contacts with Nevada).  The complaint likewise makes a prima facie showing of

23   jurisdictional facts as to the MNS Defendants by alleging that the MNS Defendants promoted the

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 8

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE:  (206) 448-1011
FACSIMILE:  (206) 448-1022

1  CTF transaction to Malone and thereby conducted business in Washington State.  (Dkt. #132, ¶ 232

2  & ¶235).

3      The SAC adequately pled the "arising out of" requirement because it made a prima facie

4  showing that but for the MNS defendants contacts with Washington, Malone's injuries would not

5  have arisen.  But for the MNS's Defendant's solicitation and misrepresentation towards the

6  Plaintiffs, Plaintiffs would not have invested in the CTF and would not have been injured.  In the

7  memorandum dated October 31, 2001, which was prepared by Clark Nuber, Sedlock, and Dubeck as

8  agent for Multi National Strategies, LLC, Michael Schwartz, and David Schwartz, the following

9  fraudulent representations were made:

10
11     •    Multi National Strategies, LLC (MNS) has indicated they have made an
          arrangement to provide "insurance" for 95% of the recourse debt for the
12        anticipated six-month period of time.  (Dkt. #132, ¶¶129-130, 236).

13     •    MNS indicated that they will provide all tax reporting information by
14        March to facilitate the conversion of the debt to nonrecourse.  (Dkt. #132, ¶¶129-
          130, 236).
15
       •    MNS indicates that the recourse loan can be converted to non-recourse in
16        six months or at the time you file your tax return, whichever is later.  You have no
          contractual right, but MNS has assured us that a conversation will occur.  (Dkt.
17        #132, ¶¶129-130, 236).

18     •    MNS had indicated that certain losses from straddles and strangles will be
19        allocated to you in 2001.  (Dkt. #132, ¶¶129-130, 236).

20     •    MNS has represented that the hedge funds utilized have very high rates of
          return.  (Dkt. #132, ¶¶129-130, 236).
21
22  The purpose of the memorandum was to (1) persuade the Plaintiffs to invest in the CTF and (2)

23  induce the Plaintiffs to rely on the misrepresentations contained in the memorandum.  The Plaintiffs

24  relied on these material misrepresentations, and would not have invested in the common trust fund if

25  he had known that these assertions were false.  These false assertions induced the Plaintiffs to invest

26

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 9

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

$1,712,500 in the CTF.  These contentions made a prima facie showing that the MNS defendants purposefully availed themselves of the privilege of doing business within Washington State, and but for their contacts, the Malones' claim would not have arisen.

For the reasons stated above, dismissal for lack of personal jurisdiction in this case is premature.  In the event, that the Court is inclined to dismiss based upon jurisdictional grounds, leave to conduct jurisdiction-specific discovery should be granted where the facts pertaining to jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.  *Wells Fargo & Co.*, 556 F.2d at 430, n.24.  Also, leave to conduct jurisdiction-specific discovery should be granted where a question exists as to whether jurisdiction could be established over a foreign corporation through the employment of another as agent.  *Davis v. Asano Bussan Co.*, 212 F.2d 558, 564-65 (5th Cir. 1954) (cited in Wells Fargo, 556 F.2d at 430 N24).[2]  Here, assuming Plaintiffs' allegations of personal jurisdiction were not sufficient, the Plaintiffs request that the Court permit discovery to allow Plaintiffs to make a more satisfactory showing of the facts as to the court's personal jurisdiction over the MNS Defendants either directly or under an agency theory.

## C.     The Statute of Limitations has not run because the Discovery Rule prevented the Action from accruing.

The pivotal question in this case is whether the discovery rule tolled the running of the statute of limitations.  In Washington State, Courts applying the discovery rule has been applied in cases where the defendant fraudulently conceals a material fact from the plaintiff and thereby deprives the plaintiff of the knowledge of accrual of the cause of action. Application of the discovery rule tolls

---

[2] Establishing personal jurisdiction over a defendant by virtue of acts of the defendant's agent is not a newly minted theory.  In *Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001), the Ninth Circuit recognized for purposes of establishing personal jurisdiction, acts of an agent are attributable to the principal.  Thus, where a plaintiff shows a party acted as agent for the defendant, that party's actions are relevant to whether the court has personal jurisdiction over the defendant.  *Id.*, 238 F.3d at 1075.  The SAC alleges that the defendants acted as agents for one another, and shows that the

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 10

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE:  (206) 448-1011
FACSIMILE:  (206) 448-1022

the limitation period until such time as the plaintiff knew or, through the exercise of due diligence, should have known of the fraud. *Interlake Porsche & Audi, Inc. v. Bucholz,* 45 Wn. App. 502, 516-17, 728 P.2d 597 (1986)., *review denied,* 107 Wn.2d 1022 (1987). The Legislature has memorialized this rule in the statute governing the limitation period for fraud. RCW 4.16.080(4).

There are two ways to establish fraudulent concealment or misrepresentation. The plaintiff may affirmatively plead and prove the nine elements of fraud or may simply show that the defendant breached an affirmative duty to disclose a material fact. *Stiley v. Block*, 130 Wn.2d 486, 515-16; 925 P.2d 194 (1996) (Talmadge, J., concurring); *Oates v. Taylor*, 31 Wn.2d 898, 902-03; 199 P.2d 924 (1948). Either method of proof will activate the statutory discovery rule for fraud, RCW 4.16.080(4). *Viewcrest Co-op Ass's v. Deer*, 70 Wn.2d 290, 295, 422 P.2d 832 (1967).

Allegations of fraud may be asserted where one party to a transaction has a duty to speak because that party possesses superior knowledge yet that party fails to state, or has no basis for, an asserted material fact. *Haberman v. Washington Pub. Power Supply Sys.,* 109 Wn.2d 107,167, 744 P.2d 1032 (1987). Even absent privity or a fiduciary relationship, parties with superior knowledge of facts basic to the transaction, which they knew or reasonably should have expected the investors to expect disclosure, may have owed a duty to the investor. *Haberman*, 109 Wn.2d at 168-69. Additionally, while requiring privity or a fiduciary relationship is warranted in negligent misrepresentation cases where a defendant is merely negligent and should not be held potentially liable to an unlimited number of plaintiffs, the same reasoning does not apply where a defendant knowingly makes a misrepresentation. *Haberman*, 109 Wn.2d at 167. The court in *Haberman* analyzed the scope of the duty that is owned by one that makes a negligent misrepresentation by

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

looking to the Restatement Second of Tort §§531, 533, and 551. [3]  *Id.* at 167-69.

Thus, while a duty in a fraud case may be owed by a defendant to plaintiffs in privity or a fiduciary relationship, a duty may also arise to those third parties where a defendant has superior knowledge necessary to prevent misrepresentation, or facts basic to the transaction where the plaintiff would reasonably expect disclosure.

In this case the MNS defendants fraudulently concealed the sham nature of the loan by representing to Coastal that the loan was valid as late as 2005, when it prepared the annual financial statements which reflected a loan of $15,600,000 and interest charges of $218,400. (Dkt. #132, ¶238) The MNS defendants intended that Malone receive this information because Enterprise contractually agreed that it would send the investor (Malone) an annual report with respect to the prior year reviewed by Coastal as well as certain information for the preparation of the investor's tax

---

[3]  The Restatement (Second) of Torts §531 provides as follows: One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons *whom he intends or has reason to expect to act or to refrain from action* in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.  (Emphasis Added).

The Restatement (Second) of Torts §533 provides as follows: The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, *is made to a third person and the maker intends or has reasons to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction* or type of transaction involved.  (Emphasis Added).

The Restatement (Second) of Torts §551 provides as follows: One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.  (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and (b) matters known to him that he knows to be *necessary to prevent his partial or ambiguous statement of the facts from being misleading*; and . . . (e) *facts basic to the transaction*, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, *would reasonably expect a disclosure of those facts*.  (Emphasis Added).

---

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 12

1
2
returns and financial compilation. (Dkt. #132, ¶ 276). Consequently, RCW 4.16.080(4), the statutory discovery rule for fraud, applies.

3
4
5
6
7
8
9
10
11
The Ninth Circuit has held that the issue of whether a plaintiff knew or should have known of a cause of action in the federal securities context presents a question for the trier of fact. *Volk v. D.A. Davidson*, 816 F.2d 1406, 1417 (9th cir. 1987). The Ninth circuit has a high bar for deciding the inquiry notice issue as a matter of law, holding that it is appropriate only when uncontroverted evidence irrefutably demonstrated plaintiff discovered or should have discovered the fraudulent conduct. *Gray v. First Winthrop Corp.*, 82 F.3d 877, 881 (9th Cir. 1996). *See also S.E. C. v. Seaboard Corp.*, 677 F.2d 1301, 1309-10 (9th cir. 1982) ("question of fraud is for trier of fact, [and the] party seeking summary disposition has extremely difficult burden.").

12
13
**D.    The Statute of Limitations was Tolled as to all claims asserted against the MNS Defendants.**

14
**(1) The Statute of Limitations is Tolled by the Continuing Relationship Doctrine.**

15
16
17
18
19
20
21
22
23
24
25
26
An action for taking, detaining, and injuring personal property of another under RCW 4.16.080(2) is tolled until the Plaintiff discovered the wrongdoing. *See Hermann v. Merril Lynch Pierce, Fenner & Smith, Inc.*, 17 Wn. App. 626, 564 P.2d 817 (1977). The statute of limitation is tolled during a fiduciary relationship. *See Gillespie v. Seattle-First Nat'l Bank*, 70 Wn. App. 150, 164, 855 P.2d 680 (1993). Even if the client has knowledge of the facts supporting the claim, the statute of limitation is tolled until the end of the attorney's representation of the client in the same matter. *See Janicki Logging & Construction Co. Inc. v. Schwabe, Williamson & Wyatt, P.C.*, 146 Wn.2d 1019, 51 P.3d 88 (2002). The discovery rule applies to stockbrokers and account executives in the same manner in which it had been applied to other actions for professional malpractice, including attorney professional malpractice suit. *Hermann,* 17 Wn. App. at 630. Thus, even if the

CTF letter and IRS notice placed the Malones on notice of nearly all the facts that defendants allegedly concealed from them and gave rise to their claim, the MNS's Defendant's continuous relationship with the Malones tolls the statute of limitation. (Dkt. #118, p. 14). The MNS Defendants were acting as fiduciaries and had a continuous relationship with the Malones until February 24, 2005. (Dkt. #132, ¶ 8). Thus, the action does not accrue until February 2005, when Malones' relationship with the MNS Defendants ended; therefore, Malones' claims are timely.

The Court's Order dated June 23, 2008, (Dkt. #118, p.14), the Court stated as follows:

> [P]laintiffs' state law claims for negligence, breach of oral contract, fraud, misrepresentation, conspiracy, constructive trust, unjust enrichment, breach of fiduciary duty and for violations of the Washington Criminal Profiteering Act are all time barred to the extent that they are based on theories that defendants misled them into believing that CTF had economic substance.

This defect is cured in the Second Amended Complaint, which alleges that the MNS Defendants (1) represented Malone in connection with his investment in the Common Trust Fund directly and through its agent Coastal Trading, LLC; (2) charged management fees; and (3) issued statements reflecting the $15 million dollar loan under management, when there was no such assets under management, until at least February 24, 2005. (Dkt. #132, ¶8). Therefore, Plaintiffs' state law claims for negligence, breach of oral contract, fraud, misrepresentation, conspiracy, constructive trust, unjust enrichment, breach of fiduciary duty, and violations of the Washington Criminal Profiteering Act are not time barred because of the continuous relationship between Malone and the MNS Defendants.

**(2)    The statute of limitations is tolled by the Doctrine of Fraudulent Concealment**

The statute of limitations may be tolled by the concealment of material facts or by misrepresentations. *Stueckle v. Sceva Steel Bldg., Inc.*, 1 Wn. App. 391, 393, 461 P.2d 555 (1969). *See also Ruth v. Dight*, 75 Wn.2d 660, 667, 453 P.2d 631 (1969); *Rutledge v. Boston Woven Hose &*

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 14

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

*Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978) (the doctrine of fraudulent concealment applies to toll the running of the statute of limitation where the defendant has misrepresented or concealed facts essential to the plaintiff's cause of action).

In this case the original Complaint was filed in September 2007.  Although it is not exactly clear which date the MNS defendants stopped representing Malone, SAC Exhibit 29 indicates that the MNS defendants continued to represent Malone until sometime in 2005 when Enterprise issued its final accounting to Coastal Trading which was to be used for the preparation of the of the final IRS Form 1120.  (Dkt. 132-36).  Although Coastal mailed a letter dated January 10, 2004 to Malone which suggested that Malone may withdraw any cash left in the investment account, MNS still had the ongoing duty to monitor the trading activities, supervise the allocation of assets, and recommend the appropriate level of leverage for the Trust Fund.  (Dkt. #132, ¶ 244).  Coastal Trading, LLC, a MNS Defendant, had a duty to assist Enterprise Trust in reconciling the net asset value of the trust fund's trading accounts, prepare monthly account statements, and provide additional information with respect to the trust fund's investment and trading activities.  (Dkt. #132, ¶ 245).

Malone did not discover that the loan was a sham because Enterprise Trust reported to Coastal Trading LLC that it had a loan of $15,600,000 under management for which Malone was charged interest of $218,400.  (Dkt. #132-36).  In this case Malone could not have reasonably discovered that the loan was a sham because Enterprise made an affirmative misrepresentation to the contrary in 2005 when it gave Coastal false information regarding the loan as late as 2005 when it prepared the annual statement for 2004.  Although David Schwartz of Coastal Trading prepared Malone's Form 1102S, neither he, nor Enterprise Trust, not the other MNS defendants informed Malone me of any reason that I would not be entitled to the interest deduction of $218,400 on the

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 15

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

1

loan of $15,600,000 which allegedly originated from Bayerische Hypo –und VereinsBank AG

2

because the loan was a sham in 2005 when they prepared my tax return for 2004.

3

**E.    Plaintiffs' Second Amended Complaint cured any previous defects as to allegations concerning the MNS Defendants activities in connection with the sham loan.**

4

5

The Court's Order dated June 23, 2008, (Dkt. #118, p. 15) stated as follows:

6

During oral argument, plaintiffs argued an additional theory of liability, that defendants charged them interest and management fees on a loan that never existed, a point they did not stress in their briefing or in the Amended Complaint. Plaintiffs allege that they did not learn that the loan was a sham until March 2007. Defendants have not offered any evidence at this point to counter that assertion. Nor can the Court conclude as a matter of law that notice that the IRS was disallowing the tax deductions constituted notice that the loan was a sham. It appears that any claims based on the alleged sham nature of the loan would not be time barred. Accordingly, plaintiffs will be permitted to amend their complaint to clarify that theory. However, they cannot continue to allege wrongdoing generally by "all defendants," Instead, they must specify the alleged wrongdoing by each specific defendant, including which defendant, if any, was responsible for the loan, made the misrepresentations about it, and charged the allegedly wrongful fees.

7

8

9

10

11

12

In the Second Amended Complaint, Plaintiffs alleged specific MNS Defendants'

13

participation in the creation of sham transactional documents to create the appearance of loans that

14

were not bona fide loans. (Dkt. #132, ¶57). Plaintiffs alleged that Multi National Strategies, LLC

15

intentionally misrepresented that the loan was a bona fide loan on the account statements it caused to

16

be issued to Malone as trustee of the Common Trust Fund. (Dkt. #132, ¶ 264).

17

**F.    Plaintiffs adequately pled Conspiracy against the MNS Defendants.**

18

19

SAC ¶ alleges that the MNS defendants were partners in a joint venture conspiracy to design,

20

promote, market, and sell to investors, including Malone, the fraudulent Coastal Trading Common

21

Trust Fund tax shelter. Under Washington Law, an action for civil conspiracy lies "where there is an

22

agreement by two or more persons to accomplish some purpose, not in itself unlawful, by unlawful

23

means." *Sterling Business Forms, Inc. v. Thorpe,* 82 Wn.App. 446, 451, 918 P.2d 531 (1996). The

24

liability of co-conspirators is joint and several, making each defendant liable for acts committed by

25

any of the parties in furtherance of the common design. *Id*. at 454. Washington Courts hold that

26

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 16

because the evidence of the conspiracy is typically in control of the alleged conspirators, "conspiracy is usually susceptible of no other proof than that of circumstantial evidence." *Id*. at 453-54.

There is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant. "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Beltz Travel Service, Inc.*, 620 F.2d 1360, 1367 (9th cir. 1980). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identify the role of each defendant in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541(9th cir. 1989).

The role of Coastal Trading, LLC is to monitor the trading activities of Deerhurst and NorthBridge, and supervise the purchase of the Warrant, advise the Trustee on the Allocation and reallocation of the assets […], and recommend to the Trustee the appropriate level of leverage from the Trust Fund. In addition, Coastal Trading, LLC will assist Enterprise Trust in reconciling the net asset value of the Trust Fund's trading accounts, preparing monthly account statements, and providing any additional information to the Trustee with respect to the Trust Fund's investment and trading activities. (Dkt. #132, ¶ 37).

Multi National Strategies, LLC, are responsible for ancillary transaction documents for the CTF transaction, including the following documents:

- Loan Document between Braxton and investor Malone;
- Pledge Agreement between Investor Malone and Braxton; Documentation of Investment made by Malone in Belmar Trading, Inc.;
- Loan Agreement between Malone and Belmar Trading, Inc.;
- Pledge Agreement between Belmar Trading, Inc. and Malone;
- Loan agreement between Belmar Trading, Inc. and Belmar Investment Trust;

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 17

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

- Documentation of investment by Belmar Trading, Inc. in Belmar Investment Trust;
- Pledge Agreement between Belmar Investment Trust and Belmar Trading, Inc.;
- Documentation of Belmar Investment Trust investment in Common Trust Fund;
- Structured Notes between Common Trust Fund and Bradonton;
- Investment by Common Trust Fund in Investor LLC.

(Dkt. #132, ¶ 37).

The role of Michael Schwartz and David Schwartz was to design, promote and sell to Malone and to other investors and to assist them in implementing the CTF transaction. (Dkt. #132, ¶32).

### G.    Plaintiffs adequately pled Fraud and Misrepresentation.

In the Court's Order dated June 23, 2008, the Court granted leave to amend the Fraud against the MNS defendants. (Dkt. #118, p. 26). Under FRCP 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. FRCP 9(b) requires more specificity including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)*. "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charges so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

The SAC cures the defects in these claims as to the MNS Defendants to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) as described in the Order. (Dkt. #118, p.24). Plaintiffs have stated their fraud and misrepresentation claims against Michael Schwartz, David Schwartz, and Coastal Trading LLC with particularity in the Second Amended Complaint. (Dkt. 132, ¶¶ 251-257). The Plaintiffs have stated their fraud and misrepresentation claims against Multi National Strategies, LLC, Michael Schwartz, and David Schwartz with particularity in their Second Amended Complaint. (Dkt. 132, ¶¶ 219, 224-230, 236-238).

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

**H.    Plaintiffs adequately pled that the MNS Defendants violated the Washington State Securities Act.**

The Court granted the Plaintiffs leave to amend their Washington State Securities Act ("WSSA") claims against the MNS Defendants. (Dkt. #118, p.23).

Plaintiffs have adequately pled that the MNS Defendants violated the WSSA. RCW 21.20.430(1) provides as follows:

> *Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010 or 21.20.140 through 21.20.230, is liable to the person buying the security from him or her,* who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security.

RCW 21.20.430 entitles those injured in violation of the WSSA to sue in law or equity and established liability for anyone who directly or indirectly controls a seller liable under [the WSSA] and every partner, officer, director, or person who occupies a similar status or perform a similar status or perform a similar function of such seller or buyer as well as every employee of seller or buyer who materially aids in the transaction and every exempt person who materially aids in the transaction is also liable jointly and severally with and to the same extent as the seller or buyer.

The WSSA is modeled after the federal securities statute, and Washington courts look to federal law for guidance in interpreting the state legislation. *See Helenius v. Chelius*, 131 Wn.App 421, 448, 120 P.3d 954 (2005). However, the purposes of the WSSA differ from that of the federal securities statutes in that there is a special emphasis on protecting individual investors, and not only the integrity of the market place. *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 125-26, 744 P.2d 1032 (1987). The provisions of the Act are therefore interpreted broadly. *Id.* at 126.

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

1
2
3
4
5
6
7
8
9
10
11

In order to maintain an action under the WSSA, the plaintiff must show the defendant made either an untrue statement of material fact or omitted such a fact in connection with a security transaction and that the defendant was a seller or offeror of the security.  *Shinn v. Thrust IV, Inc.*, 56 Wn.App. 827, 851, 786 P.2d 285 (1990); *see also Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007).  A party qualifies as a seller "if his acts were a substantial contributive factor in the sales transaction."  *Haberman*, 109 Wn.2d at 131.  To determine whether the acts constitute a substantial contributive factor, Washington courts consider: (1) the number of other factors which contribute to the sale and the extent of the effect they have in producing it; (2) whether the defendant's conduct has created a force or series of forces which are in continuous and active operation up to the time of the sale, and (3) lapse of time.  *Id.* at 131-32.

12
13
14
15
16
17
18
19
20
21

Plaintiff has sufficiently pled his WSSA claim against each of the MNS defendant. Regarding the first element for WSSA liability under RCW 21.20.010, Plaintiffs have sufficiently pled that each of the MNS defendants either made patently false statements in the Coastal Trading Common Trust Fund Private Offering Memorandum or omitted key aspects of the HVB loans which were a crucial element of the solicitation of the investment strategy.  See discussion in "Fraud," supra.  These allegedly false statements are, if proven, adequate to constitute a violation of RCW 21.20.010(2) and survive a 12(b)(6) motion to dismiss.  *See Kinney*, 159 Wn.2d at 842-43 (plaintiffs payers of promissory note met first element by showing holder of promissory note failed to mention he had burdened the corporation with millions in debt).

22
23
24
25

Plaintiff's SAC satisfies the second element of the WSSA claim against Coastal Trading LLC because the interest in the Coastal Trading Common Trust Fund Series III and Series IV qualifies as a security, and the SAC alleges that Coastal Trading LLC, MultiNational Strategies,

26

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 20

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE:  (206) 448-1011
FACSIMILE:  (206) 448-1022

LLC, Michael Schwartz and David Schwartz either qualify as sellers of the CTF investment program to Malone or materially aided in the sale under RCW 21.20.430(1) and (3).  See SAC

In defining a "security," Washington courts mirror the federal definition of security and apply a "flexible rather than static principle" in order to keep up with the countless "schemes" devised by those who use the money of others.  *State v. Pedersen*, 122 Wn.App. 759, 764, 95 P.3d 385 (2004).  It is a question of law whether an investment scheme constitutes a security.  *De Luz Ranchos Inv. Ltd. V. Coldwell Banker & Co.*, 608 F.2d 1297, 1299-1301 (9th cir. 1979).  RCW 21.20.005(12) defines security very broadly, and includes any "investment contract" or "investment of money . . . in the risk capital of a venture with the expectation of some valuable benefit to the investor where the investor does not receive the right to exercise practical and actual control over the managerial decisions of the venture."  *See Shinn*, 56 Wn.App. at 849 n.5.

The SAC alleges sufficient information to qualify Coastal Trading LLC, MultiNational Strategies, LLC, Michael Schwartz and David Schwartz as sellers of securities.  Plaintiff's allegations that Coastal Trading LLC approached him about participating in the Common Trust Fund Investment program and that Coastal Trading provided him with a prospectus in their Confidential Memorandum explaining how the CTF investment program worked constitutes an adequate pleading of promotional conduct.  Furthermore, Plaintiff's allegations that Coastal Trading was the source of the CTF scheme and "was thoroughly involved in the development, marketing and implementation of the product qualifies Coastal Trading as a seller under the substantial contributive factor test.  Haberman, supra.  The Court should decline to dismiss the WSSA claim against Coastal Trading LLC on 12(b)(6) grounds.

I.     **Plaintiffs adequately pled Negligent Misrepresentation against the MNS Defendants.**

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE:  (206) 448-1011
FACSIMILE:  (206) 448-1022

1
2
3
4
5
6
7
8
9
10
11
12
13

The Court granted the Plaintiffs leave to amend their negligent misrepresentation claims against the MNS defendants.  (Dkt. #118, p.26)  To establish a claim for negligent misrepresentation in Washington, a plaintiff must show that the defendant: (1) The defendant knew, or should have known, that the negligently supplied false information would guide the plaintiff in making a business decision; (2) the plaintiff justifiably relied on the false information; and (3)  the false information was the proximate cause of the claimed damages.  *Van Dinter v. Orr*, 157 Wn.2d 329, 333, 138 P.3d 608 (2006).  If a party has a duty to disclose information and fails to do so, that failure can constitute negligent misrepresentation. *Colonial Imports, Inc. v. Carlton, N.W., Inc*., 121 Wn.2d 726, 731-33, 853 P.2d 913 (1993).  The duty to disclose unknown material facts exists can arise when there is a "quasi-fiduciary" relationship; i.e., where a special relationship of trust and confidence exists and one party is privy to material facts "not easily discoverable" by the other, or when one party relies on the specialized knowledge of the other.  *Id*. at 732.

14
15
16
17
18
19
20
21

Although Malone is a sophisticated businessman, and employed his own independent accountants and lawyers in his transactions with the MNS defendants, he has sufficiently pled that Coastal Trading LLC, MultiNational Strategies, LLC, Michael Schwartz and David Schwartz were privy to material facts that were not readily discoverable.  The Court held that Malone has alleged sufficient facts to suggest a duty flowing from the MNS defendants to himself.  (Dkt. #118, p.20).  That duty can give rise to a negligent misrepresentation claim.  Therefore, the negligent misrepresentation claim should not be dismissed under 12(b)(6).

22
23

J.     **Plaintiffs sufficiently pled Breach of Written Contract against the MNS Defendants.**

24
25
26

The Court granted leave to amend the breach of written contract claims and the claims of breach of the Duty of Good Faith and Fair Dealing against the MNS defendants.  (Dkt. #118, p.18-

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 22

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE:  (206) 448-1011
FACSIMILE:  (206) 448-1022

19.)  The SAC cures the defects in these claims as to the MNS Defendants.  The Court has already ruled that the breaches of written contract claims are not time barred.  (Dkt. #118, p.14).

Under Washington law, to bring a cause of action for breach of contract, Plaintiff must establish (1) the existence of a valid and enforceable contract; (2) the rights of the plaintiff and obligations of the defendant under the contract; (3) violation of the contract by the defendant, and (4) damages to the plaintiff.  *Citoli v. City of Seattle*, 115 Wn.App. 459, 476, 61 P.3d 1165 (2002). The SAC cures the defects in the breach of contract claims as to the MNS defendants as described in the Court's Order.  (Dkt. #118, p.18).  The breach of contract claims against Michael Schwartz, David Schwartz, and Coastal Trading LLC are stated with particularity in the Second Amended Complaint.  (Dkt. #132, ¶¶ 243-248).  The breach of contract claims against MultiNational Strategies LLC, Michael Schwartz, and David Schwartz are stated in the SAC at ¶ 226-228.

### K.    Plaintiffs sufficiently pled MNS's Breach of their Contractual Duty of Good Faith.

The Court granted the Plaintiffs leave to amend their contractual duty of good faith claims against the MNS Defendants.  (Dkt. #118, p.18).  Plaintiffs' Second Amended Complaint has sufficiently pled that the MNS Defendants breached their contractual duty of good faith by (1) taking advantage of superior knowledge and (2) failing to disclose that MNS had participated in the creation of loan documentations that misrepresented that fact that the loan lacks economic substance. (Dkt. #132, ¶¶ 57, 390, 393, 394, 395)

In *Liebergesell v. Evans*, 93 Wn.2d 881, 890-91, 613 P.2d 1170 (1980), the Washington State Supreme Court held that the duty to disclose relevant information to a contractual party can arise as a result of the transaction itself within the parties general obligation to deal in good faith.  *Id*. at 893. The court adopted the Restatement of Contracts § 472 (1932), which states, "There is no privilege of non-disclosure by a party who . . . (b) knows that the other party is acting under a mistake as to

1  undisclosed material facts, and the mistake if mutual would render voidable a transaction caused by

2  relying thereon, or (c) occupies such a relation to the other party as to justify the latter in expecting

3  that his interests will be cared for." *Id.* at 894 (failure to disclose that loans violated usury statute

4  was violation of contractual duty of good faith).

**L.    Plaintiffs sufficiently pled their relief for Rescission against the MNS Defendants.**

5

6      The Court granted Plaintiffs leave to amend their complaint to specify the alleged agreements

7  they would like to have rescinded.  (Dkt. #118, p. 27).  Rescission is available as a statutory remedy

8  under the WSSA under RCW 21.20.430(1).  Plaintiffs specifically pled that they  would like to

9  rescind the Coastal Trading common trust fund Series III and Series IV subscription agreements,

10  signed agreements between Coastal Trading, LLC and Malone. (Dkt. #132, ¶ 404).

11

**Conclusion**

12

13      For the reasons and legal authorities stated herein, the MNS Defendant's motion to

14  dismiss the Second Amended Complaint should be denied.  Plaintiffs move to strike the MNS

15  Defendants' Supplemental Motion to Dismiss.  (Dkt. #152).  Such Supplemental Motion is not

16  permitted by the Court Rules and provides the MNS Defendants with an unfair advantage.  (Dkt.

17  #157, p.3 n.2).  Motions to Dismiss shall not exceed twenty four pages, CR 7(e)(3), and the MNS

18  Defendants' Motion to Dismiss, (Dkt. #146), is twenty-four pages. Furthermore, the court has stated

19  that any further filings that do not comply with the Local Rules, such as supplemental responses or

20  replies, shall not be considered by the Court.  (Dkt. #156, p.2 n.1).

21  DATED this 3rd day of November, 2008.

22

23                                  ISAACSON & WILSON, P.S.

24                                      /s/

25                                  _____

26                                  Mark J. Wilson WSBA No. 16675
                                   Attorneys for Plaintiff

ISAACSON & WILSON, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
TELEPHONE: (206) 448-1011
FACSIMILE: (206) 448-1022

CERTIFICATE OF SERVICE

     I, Mark J. Wilson, hereby certify that on November 3, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties / attorneys of record.

Dated this 3rd day of November, 2008.

    _/s/_____
    Mark J. Wilson, WSBA 16675

PLAINTIFF'S OPPOSITION TO MNS DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT - 25