UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL MALONE, *et al.*,

Plaintiffs,

v.

CLARK NUBER, P.S., *et al.*,

Defendants.

Case No. C07-2046RSL

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on a motion to dismiss and "supplemental" motion to dismiss filed by Multi National Strategies, LLC, Coastal Trading LLC, Michael N. Schwartz, and David Schwartz (collectively, the "MNS defendants"). Plaintiffs Michael and Barbara Malone allege that the defendants, who include the MNS defendants and other entities and individuals too numerous to list, designed, promoted, and defrauded them into participating in an abusive tax shelter called the "Coastal Trading Common Trust Fund Series III" and the "Coastal Trading Common Trust Fund Series IV" (collectively, "CTF"). The IRS ultimately disallowed CTF and imposed penalties and interest on plaintiffs, which they now seek to recover from defendants. Plaintiffs also seek to recover the fees they paid to defendants for professional services that, accordingly to plaintiffs, were performed negligently or not at all.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 1

For the reasons set forth below, the Court grants in part and denies in part the MNS defendants' motion to dismiss.[1]

## II. DISCUSSION

### A. Background Facts.

The facts relevant to this motion were set forth in the Court's June 23, 2008 order granting in part and denying in part motions to dismiss filed by several defendants (Dkt. #118, the "Order") and will not be repeated here. Plaintiffs allege that Coastal Trading LLC "designed, implemented, and executed the CTF transaction." Third Amended Complaint at ¶ 222. They further allege that the MNS defendants collected fees in connection with the transaction and issued monthly reports to Malone. Id.

The Order dismissed with prejudice plaintiffs' claims for federal securities violations, violations of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq*., and their Washington Consumer Protection Act claims. The Order also dismissed some of plaintiffs' other claims with leave to amend. The Court exercised supplemental jurisdiction over plaintiffs' remaining state law claims.[2]

Plaintiffs subsequently filed a second amended complaint. After defendants moved to dismiss the second amended complaint, plaintiffs moved to file a third amended complaint to amend the date that the Clark Nuber defendants allegedly represented plaintiffs. The Court

---

[1] The Court previously heard oral argument in this matter on May 12, 2008. Because the current motion presents many of the same issues, and because it can be decided on the parties' memoranda, supporting documents, and the remainder of the record, the MNS defendants' request for oral argument is denied.

[2] The MNS defendants request that the Court decline to exercise supplemental jurisdiction over plaintiffs' remaining claims. However, the Order directly addressed that issue and stated that the Court would exercise supplemental jurisdiction. Order at pp. 11-12. During oral argument, the MNS defendants did not object to the exercise of supplemental jurisdiction when the Court explicitly raised the issue. Nor did the MNS defendants move for reconsideration of the Order on that issue. There is no basis for the Court to alter its prior ruling.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 2

granted plaintiffs leave to file the third amended complaint. Because the third amended complaint did not alter any of the allegations against the MNS defendants, the Court did not order them to refile their motion to dismiss. Rather, the Court construes the MNS defendants' motion to dismiss as directed towards the third amended complaint.

**B.     Personal Jurisdiction.**

The MNS defendants contend that plaintiffs have not established that this Court has personal jurisdiction over them. Plaintiffs have the burden of making a *prima facie* showing of personal jurisdiction. See, e.g., <u>Bourassa v. Desrochers</u>, 938 F.2d 1056, 1057 (9th Cir. 1991) (internal citation omitted). On a motion to dismiss for lack of personal jurisdiction, the Court must assume that the allegations in the complaint are true. See, e.g., <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1108 (9th Cir. 2002). However, the Court is not required to accept plaintiffs' bare allegations if defendant controverts them with evidence. See, e.g., <u>AT & T v. Campagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996); see also <u>Taylor v. Portland Paramount Corp.</u>, 383 F.2d 634, 639 (9th Cir. 1967) (explaining that mere allegations are insufficient to establish personal jurisdiction if they are contradicted by affidavits).

"Personal jurisdiction must exist for each claim asserted against a defendant." <u>Action Embroidery Corp. v. Atlantic Embroidery, Inc.</u>, 368 F.3d 1174, 1180 (9th Cir. 2004). By previous order, the Court found that "now that the federal claims have been dismissed, they can no longer provide a basis for asserting pendent personal jurisdiction over MNS for the state law claims." Order Granting in Part Motion for Reconsideration at p. 3. The Court held that plaintiffs must establish an independent basis for asserting personal jurisdiction over the MNS defendants.

The exercise of jurisdiction must comport with the state's long arm statute, and with the constitutional requirement of due process. See <u>Omeluk v. Langsten Slip & Batbyggeri</u>, 52 F.3d 267, 269 (9th Cir. 1995) (internal citation omitted). "Because the Washington long arm statute reaches as far as the Due Process Clause, all we need to analyze is whether the exercise of

jurisdiction would comply with due process." Id. (internal citations omitted). For a forum state to have personal jurisdiction over an out-of-state defendant, that defendant must "have certain minimum contacts with the forum state, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The due process requirements ensure that individuals have "fair warning that a particular activity may subject [them] to jurisdiction of a foreign sovereign." Shaffer v. Heitner, 433 U.S. 186, 218 (1977).

Where, as in this case, general jurisdiction is lacking, a court may nevertheless exercise "limited" or "specific" personal jurisdiction depending upon "the nature and quality of the defendant's contacts in relation to the cause of action." Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The Ninth Circuit utilizes a three-part test for determining whether due process allows for the exercise of specific jurisdiction: "(1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991) (emphasis removed).

The purposeful availment inquiry requires an evaluation of whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1485 (9th Cir. 1993). This element may be met if "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents. . . . It is not required that a defendant be physically present within, or have physical contact with, the forum, provided that his efforts are purposefully directed toward forum residents." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal citations omitted); see also Davis v. Metro Prods., Inc., 885

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 4

1  F.2d 515, 520 (9th Cir. 1989) (explaining that the first prong is met if defendants "purposefully
2  directed their activities toward or consummated some transaction with the forum or residents
3  thereof").

In this case, plaintiffs allege that the MNS defendants entered into a contract with plaintiffs and thereby created continuing obligations to them. Plaintiffs contend that the Coastal Trading Program Private Offering Memorandum Series III and Series IV constituted a contract and set forth certain responsibilities that the MNS defendants agreed to undertake. Third Amended Complaint at ¶¶ 243-248. Although a party's contract with an out-of-state entity, by itself, is not sufficient to establish personal jurisdiction, in this case there were both pre-contract negotiations and on-going obligations created by the contract. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985). The MNS defendants mailed a letter to Malone at his Seattle address before the contract was executed. Third Amended Complaint, Dkt. #132-7 (attaching a nonconfidentiality disclosure letter; requesting that Malone sign it and send it back if it "accurately reflects our agreement"). The letter reflects pre-contract negotiations: a requirement that its terms be accepted prior to an offer to participate in CTF. Malone signed the letter. The MNS defendants provided plaintiffs with extensive information about CTF and offered them the opportunity to invest in CTF. Plaintiffs accepted that offer.

In addition to entering into a contract, plaintiffs allege that the MNS defendants assisted the Clark Nuber defendants in preparing the October 31, 2001 memorandum that summarized CTF, misrepresented the transaction, and induced the Malones to invest in CTF. Third Amended Complaint at ¶¶ 236, 257. Although they filed a declaration in support of their motion to dismiss, the MNS defendants have not disclaimed those actions. The purpose of the memorandum was to persuade plaintiffs to invest in CTF. Id. at ¶ 4. The MNS defendants created on-going obligations to plaintiffs by indicating via the memorandum that (1) they would provide all tax reporting information by March to facilitate the conversion of the debt to nonrecourse, and (2) certain losses from the straddles and strangles will be allocated to plaintiffs

in 2001.  Third Amended Complaint at ¶¶ 129-130, 236.  On November 2, 2001, the MNS defendants mailed to Malone numerous documents regarding CTF for Malone to review, sign, and return.  Id. at ¶ 79.  Plaintiffs also allege that the MNS defendants assisted in creating the transactional documents which failed to disclose that the loan was a sham.  Id. at ¶¶ 93, 94.  Moreover, the MNS defendants mailed the letter, other CTF-related documents, tax documents and periodic account statements to Malone over the years.  They sent those documents to Malone in Seattle, so they knew that they were contracting with a Washington resident.

       The MNS defendants argue that the Ninth Circuit has explained that the "use of the mails, telephone, or other internal communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state" and are legally insufficient to satisfy due process.  Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985).  The defendant in *Peterson*, however, did not enter into a contract with the plaintiff.  Rather, the plaintiff was relying solely on the communications to establish purposeful availment.  The existence of the contract and continuing obligations thereunder distinguish the facts of this case.  See, e.g., Burger King, 471 U.S. at 473 (explaining that "with respect to interstate contractual obligations, we have emphasized that parties who 'reach beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their actions") (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)); see also Silver Valley Partners, LLC v. De Motte, 400 F. Supp. 2d 1262 (W.D. Wash. 2005) (finding purposeful availment where defendant made false promises to Washington residents to induce them to invest).  Therefore, the MNS defendants purposefully availed themselves of the privilege of conducting business in Washington.[3]

       The second element of the specific jurisdiction test requires that plaintiff's claim arise out

---

[3] The MNS defendants argue that plaintiffs have not shown that Clark Nuber was acting as their agent such that Clark Nuber's contacts could be attributed to the MNS defendants. However, even without attributing Clark Nuber's contacts to the MNS defendants, there is sufficient evidence to find that the Court has personal jurisdiction over the MNS defendants.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 6

of or result from the defendant's forum-related activities. Garcia Marquez, 942 F.2d at 620-21. The Ninth Circuit uses a "but for" test to determine whether the claim arises out of forum-related activities. See, e.g., Ballard, 65 F.3d at 1500. In this case, but for the MNS defendants' contacts with Washington, including sending plaintiffs numerous CTF-related documents and entering into the alleged contract, plaintiffs would not have invested in CTF, and their alleged injuries would not have occurred. Furthermore, plaintiffs alleged that they would not have invested but for the alleged misrepresentations in the October 31, 2001 memorandum that the MNS defendants helped prepare. The MNS defendants contend that Clark Nuber took those alleged representations from the MNS defendants and incorporated them into the memorandum "unilaterally, without any assistance from the MNS defendants." Reply at p. 4. They do not provide a declaration to support that assertion. The truth of the allegations is a matter better left for a later motion. At this stage, plaintiffs have sufficiently alleged facts to meet the "arising out of" element.

Once a plaintiff has satisfied the first two prongs on the test, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction is unreasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2002); see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) (explaining that defendant bears the burden of showing that the exercise of personal jurisdiction would be unreasonable) (citing Burger King, 471 U.S. at 476-77). Courts consider seven factors when determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, and is therefore reasonable:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

RIO Props., Inc. v. RIO Int'l Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002). The MNS defendants have not shown any factors that would make the exercise of jurisdiction

unreasonable. Although their interjection into this forum was not extensive, it was purposeful and created continuing obligations to plaintiffs. Given the realities of modern communication and travel, the burden of litigating in this forum is not great. The MNS defendants are sophisticated business people; there is no evidence that they were deceived into entering into a relationship with Washington residents. Nor were they forced to sign contracts of adhesion binding them to a Washington forum. Defendants have not shown any conflict with the sovereignty of their home state. In contrast, Washington has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473 (internal citation and quotation omitted). Similarly, plaintiffs are litigating their claims against several other defendants in this forum, so it would be efficient to litigate the claims in this forum. There is no alternate forum where all of the claims may be tried together.

Accordingly, the MNS defendants' motion to dismiss for lack of personal jurisdiction is denied.

**C.      Timeliness of Plaintiffs' Claims.**

The MNS defendants' supplemental motion to dismiss requests that the Court dismiss many of plaintiffs' claims as time barred. Most of the actions which underlie plaintiffs' claims occurred in 2001. As set forth in the Order, all of plaintiffs' remaining state law claims have three-year statutes of limitations except their claim of breach of a written contract, which has a six-year statute of limitations pursuant to RCW 4.16.040. Plaintiffs do not dispute these limitations periods. Nevertheless, plaintiffs argue that their claims are timely because the applicable statutes of limitations are tolled under one or more theories: the discovery rule, the doctrine of continuing representation, and the doctrine of fraudulent concealment.

Under the doctrine of continuing representation, the statute of limitations for tort and contract claims is tolled during a professional's "representation of the client in the same matter from which the malpractice claim arose." See Burns v. McClinton, 135 Wn. App. 285, 293

(2006). Plaintiffs allege that the MNS defendants continued to represent them on the CTF matter until at least February 24, 2005, which was within the limitations period for all of the remaining claims. Third Amended Complaint at ¶ 8. Courts have applied the doctrine to toll claims against attorneys, accountants, physicians, and other fiduciaries. See, e.g., Hermann v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 17 Wn. App. 626 (1977). The MNS defendants argue that they were not plaintiffs' fiduciaries. They note that the CTF private offering memorandum states that the "investment advisor for the Trading Account will be Deerhurst." Third Amended Complaint, Exs. 1, 2. The private offering memorandum states that Coastal Trading LLC "is the asset allocator to the Trust Fund." Id. In that capacity, it was responsible for monitoring and assisting some of the other defendants in carrying out their duties. The third amended complaint, however, alleges that the MNS defendants functioned as plaintiffs' investment advisors, and were therefore fiduciaries. Third Amended Complaint at ¶ 354. At this point, before any discovery has occurred, the role of the MNS defendants is not clear. The MNS defendants have not filed a declaration to explain their role, nor does the private offering memorandum explicitly disclaim an advisor role. The Court will not determine as a matter of law that they did not act as investment advisors, despite the allegation to the contrary. Accordingly, the third amended complaint sufficiently alleges that the MNS defendants acted as plaintiffs' fiduciaries. That allegation is sufficient to allow the claims to proceed on the theory that the statute of limitations could be tolled by the continuous representation doctrine.[4]

**D.      Sufficiency of the Fraud Allegations.**

The MNS defendants move to dismiss plaintiffs' fraud-related allegations because they do not meet the pleading standard of Federal Rule of Civil Procedure 9(b). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). A claim

---

[4] The Court need not address plaintiffs' other contentions that the statutes of limitations are tolled by the discovery rule and/or because of fraudulent concealment.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 9

for conspiracy to commit fraud is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Id. Rule 9(b) requires that plaintiffs allege "the who, what, when, where, and how" of the misconduct alleged. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

The MNS defendants contend that plaintiffs' complaint should be dismissed because it improperly relies on "shotgun" and "puzzle" pleading. Motion to Dismiss at pp. 20-21. Certainly, it is difficult to locate and understand some of plaintiffs' claims. Their third amended complaint is prolix, spans 158 pages and spreads allegations against the defendants in numerous, and sometimes seemingly random, places. It references and attaches hundreds of pages of documents. Plaintiffs seem unable to state their allegations succinctly. Similarly, plaintiffs' opposition to the motion to dismiss is often conclusory and fails to reference relevant portions of their complaint. For example, plaintiffs simply state that they have pled their fraud and misrepresentation claims with particularity, then cite to eleven paragraphs of the second amended complaint. Despite these difficulties, plaintiffs' third amended complaint is not so disorganized as to warrant dismissal. Instead, it is possible to link their allegations with the specific defendants, though doing so takes much more work than it should.

Although the MNS defendants argue that plaintiffs' claims are insufficiently *pled*, their memoranda stress the lack of *evidence* to support the claims. However, at this stage, the Court is concerned with the sufficiency of the pleadings, not the quantum and quality of proof offered. The third amended complaint contends that the loan was a sham, the MNS defendants knew it, and they concealed that fact from plaintiffs and affirmatively represented that it was bona fide in the October 31, 2001 memorandum that they helped write and in various statements they sent to plaintiffs. Third Amended Complaint at ¶¶ 57, 129, 230 (alleging that MNS prepared the loan agreement and "fraudulently omitted to inform Malone that the loan documents were created to create the appearance of a loan which was not a bona fide loan"), ¶¶ 236, 238 (referencing a letter to Malone that attached an IRS form the MNS defendants prepared for Malone that

indicated that he had a loan in place, when in fact the loan was a sham), ¶ 253. Those allegations are sufficient to allege that the MNS defendants concealed the sham nature of the loan.

The MNS defendants argue that plaintiffs contradict their own allegations of a sham loan. Motion to Dismiss at pp. 11-12 (citing the Second Amended Complaint, which references "borrowed funds from HVB"). However, plaintiffs also argue that the loan was a sham because defendants essentially just moved the funds around from one account to another. The third amended complaint does not disavow or undermine that theory. Accordingly, the Court finds that plaintiffs have adequately pled their fraud claims.

**E.  Dismissal for Failure to State a Claim.**

**1.  Applicable Dismissal Standards.**

The MNS defendants seek dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The complaint should be liberally construed in favor of the plaintiff and its factual allegations taken as true. See, e.g., Oscar v. Univ. Students Coop. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992). The Supreme Court has explained that "when allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007) (internal citation and quotation omitted).

**2.  Breach of Fiduciary Duty and Aiding and Abetting Thereof.**

As set forth above and as the Court found in the Order, plaintiffs have sufficiently alleged the existence of a fiduciary duty at this stage of the proceedings. Plaintiffs also allege that the MNS defendants knowingly aided and abetted the remaining defendants' concealment and misrepresentations of fact regarding CTF. Third Amended Complaint at ¶¶ 353, 358-59. The MNS defendants argue that they "could not have acquired knowledge of the remaining defendants' alleged misrepresentations and concealment based on Plaintiffs' inference." Motion

to Dismiss at p. 14. However, to resolve this motion, the Court focuses on the sufficiency of the allegations. Although plaintiffs may ultimately be unable to prove their allegations, they are sufficient at this stage.

### 3. Constructive Trust.

The Order explained that plaintiffs did not respond to defendants' argument that constructive trust is a remedy, not a cause of action. Nor did plaintiffs respond to defendants' arguments to dismiss the claim in the most recent motion to dismiss. The Court has not found any authority that would permit plaintiffs to assert an equitable remedy as a cause of action. Accordingly, plaintiffs' constructive trust claim against the MNS defendants is dismissed.

### 4. Claims for Professional Negligence and Negligent Misrepresentation.

The MNS defendants argue that plaintiffs' claims for professional negligence must be dismissed because plaintiffs have not sufficiently alleged that the MNS defendants were their investment advisors. As set forth above, however, plaintiffs' allegation is sufficient.

Moreover, plaintiffs have sufficiently alleged a claim for negligent misrepresentation. If the MNS defendants were acting as plaintiffs' fiduciaries as they allege, then they had a duty to disclose material facts to them. Plaintiffs allege that they failed to disclose the sham nature of the loan. That allegations is sufficient to state a claim for negligent misrepresentation.

### 5. Breach of Contract and Unjust Enrichment.

The Order dismissed plaintiffs' breach of contract claim with leave to re-plead because they failed to identify a promise that the MNS defendants made and breached. In the current complaint, plaintiffs allege that the MNS defendants breached the Coastal Trading Program Private Offering Memorandum Series III and Series IV (the "POM"). The POM set forth certain responsibilities that the MNS defendants agreed to undertake, including supervising the trust fund. Plaintiffs allege that the MNS defendants did not perform the duties listed in the POM. Third Amended Complaint at ¶¶ 243-248. Plaintiffs also allege that the MNS defendants breached the subscription agreements by making false representations about the loan. Id. at ¶¶

389-95. Furthermore, plaintiffs allege that the MNS defendants breached their duty of good faith and fair dealing. Id. at ¶¶ 243-248. The MNS defendants contend that plaintiffs have not adequately alleged a violation of the subscriptions agreements because those documents do not set forth any obligations or promises by the MNS defendants. However, plaintiffs' allegations are sufficient that the POM set forth the MNS defendants' duties and they failed to perform those duties. Therefore, plaintiffs have adequately pled a claim for breach of contract and breach of the duty of fair dealing.

The claim for unjust enrichment does not fare as well. The Order noted that plaintiffs had written contracts with the defendants, and a party to an express contract may not bring an action under a theory of an implied contract relating to the same matter. Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604-05 (1943). The Order also noted that the amended complaint did not identify any implied contract with any of the defendants. The MNS defendants reiterated that argument in their motion to dismiss, and plaintiffs have not responded to it. It appears that they have abandoned their unjust enrichment claim. Regardless, plaintiffs's unjust enrichment claim is dismissed for failure to identify an implied contract.

**6.    The WSSA – Timeliness, Rescission, and "Derivative" Claims.**

The MNS defendants argue that the Court's previous failure to dismiss the WSSA claim as time barred was an "oversight." The Order, however, explicitly declined to dismiss the WSSA claim on timeliness grounds because plaintiffs alleged that they learned for the first time that the loan was a sham in March 2007. In their current complaint, plaintiffs have sufficiently alleged a continuing relationship to toll the statute of limitations. Accordingly, the Court will not dismiss the WSSA claim as untimely. The MNS defendants also argue that plaintiffs cannot show that they "made any misrepresentations or omissions in connection with the Coastal Trading CTF transaction." Motion to Dismiss at p. 16. However, as set forth above, plaintiffs' allegations are sufficient in that regard.

Plaintiffs seek to rescind the Coastal Trading Common Trust Fund Series III and IV

subscription agreements.  Amended Complaint at ¶ 404.  Plaintiffs note that the WSSA permits rescission and they argue that they have adequately pled their rescission claim.  However, plaintiffs did not respond to the MNS defendants' argument that rescission is a remedy, not a cause of action.  See, e.g., Zola v. Gordon, 685 F. Supp. 354, 374 (S.D.N.Y. 1988).  Plaintiffs also ignored defendants' argument that they may not seek rescission while simultaneously seeking damages for breach of the same agreements.  See, e.g., Ballow v. Brasted O'Brien & Rusin, P.C. v. Logan, 435 F.3d 235, 238 (2d Cir. 2006) ("A party induced to enter into a contract by fraud or misrepresentation must make a choice; the party may either elect to accept the situation created by the fraud and seek to recover his damages or he may elect to repudiate the transaction and seek to be returned to the status quo;" explaining that "as a general rule . . . the defrauded party cannot both rescind and maintain an action for deceit").  Plaintiffs have not cited any authority permitting them to seek both rescission of and damages under the same contract.  Accordingly, plaintiffs' rescission claim is dismissed.  The Court will consider reinstating the claim if plaintiffs file a motion for reconsideration stating that they are electing to pursue rescission rather than a claim for damages under the relevant agreements.

Finally, the third amended complaint states that the MNS defendants' violations of the WSSA are "derivatively violations of the Washington Criminal Profiteering Act, RCW 9A.82 *et seq.* and the Washington Unfair Business Practices/Consumer Protection Act, RCW 19.86 *et seq.*"  Third Amended Complaint at ¶ 379.  The Order dismissed plaintiffs' claim for violations of the CPA with prejudice and dismissed the Criminal Profiteering Act claim without prejudice.  Although the MNS defendants argued that plaintiffs cannot now "derivatively" assert those claims, plaintiffs did not respond to that argument or offer any explanation for reasserting those claims.  The Order dismissed the Criminal Profiteering Act claim because plaintiffs did not identify any predicate criminal conviction against the MNS defendants.  The third amended complaint does not do so.  Accordingly, the Order's prior dismissal of the CPA and Criminal Profiteering Act claims stands.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 14

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the MNS defendants' motion to dismiss (Dkt. #146) and denies the supplemental motion to dismiss (Dkt. #152). The Court dismisses plaintiffs' claims for constructive trust and unjust enrichment and dismisses plaintiffs' "derivative" claims under the CPA and Criminal Profiteering Act. Plaintiffs may proceed with their remaining claims.

DATED this 23rd day of February, 2009.

_____
Robert S. Lasnik
United States District Judge