UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL MALONE, *et al.*,

    Plaintiffs,

  v.

CLARK NUBER, P.S., *et al.*,

    Defendants.

Case No. C07-2046RSL

ORDER GRANTING
MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on a motion to dismiss filed by Ahrens & DeAngeli and Edward Ahrens (collectively, "A&D"). Plaintiffs Michael and Barbara Malone allege that the defendants, who include A&D and other entities and individuals too numerous to list, designed, promoted, and defrauded them into participating in an abusive tax shelter called the "Coastal Trading Common Trust Fund Series III" and the "Coastal Trading Common Trust Fund Series IV" (collectively, "CTF"). The IRS ultimately disallowed CTF and imposed penalties and interest on plaintiffs, which they now seek to recover from defendants. Plaintiffs also seek to recover the fees they paid to defendants for professional services that, accordingly to plaintiffs, were performed negligently or not at all. A&D seeks to dismiss the claims as untimely, inadequately pled, and substantively untenable.

For the reasons set forth below, the Court grants A&D's motion to dismiss.[1]

## II. DISCUSSION

**A.     Background Facts.**

The facts relevant to this motion were set forth in the Court's June 23, 2008 order granting in part and denying in part motions to dismiss filed by several defendants (Dkt. #118, the "Order") and will not be repeated here. Plaintiffs allege that A&D was engaged to review CTF documents and provide legal advice regarding the transaction. Third Amended Complaint at ¶ 175. Clark Nuber's engagement letter to plaintiffs stated that Ahrens would "advise you as to his assessment and legal advice regarding the legal aspects of these transactions." Id.

The Order dismissed with prejudice plaintiffs' claims for federal securities violations, violations of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq*., and their Washington Consumer Protection Act claims. The Order also dismissed some of plaintiffs' other claims with leave to amend. The Court exercised supplemental jurisdiction over plaintiffs' remaining state law claims.

Plaintiffs subsequently filed a second amended complaint. After defendants moved to dismiss the second amended complaint, plaintiffs moved to file a third amended complaint to amend the date that the Clark Nuber defendants allegedly represented plaintiffs. The Court granted plaintiffs leave to file the third amended complaint. Because the third amended complaint did not alter any of the allegations against A&D, the Court did not order them to refile their motion to dismiss. Rather, the Court construes A&D's motion to dismiss as directed towards the third amended complaint.

**B.     Timeliness of Plaintiffs' Claims.**

Most of the actions which underlie plaintiffs' claims occurred in 2001, but plaintiffs did

---

[1] The Court previously heard oral argument in this matter on May 12, 2008. Because the current motion presents many of the same issues, and because it can be decided on the parties' memoranda, supporting documents, and the remainder of the record, A&D's request for oral argument is denied.

ORDER GRANTING
MOTION TO DISMISS - 2

1  not file their complaint until September 2007.  As set forth in the Order, all of plaintiffs'
2  remaining state law claims have three-year statutes of limitations except their claim for breach of
3  a written contract, which has a six-year statute of limitations pursuant to RCW 4.16.040.
4  Plaintiffs do not dispute these limitations periods.  Nevertheless, plaintiffs argue that their claims
5  are timely because the applicable statutes of limitations are tolled under the doctrine of
6  continuing representation and/or the discovery rule.

Under the doctrine of continuing representation, the statute of limitations for tort and contract claims is tolled during a professional's "representation of the client in the same matter from which the malpractice claim arose."  See Burns v. McClinton, 135 Wn. App. 285, 293 (2006).  Courts have applied the doctrine to toll claims against attorneys, accountants, physicians, and other fiduciaries.  See, e.g., Hermann v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 17 Wn. App. 626 (1977).  Although plaintiffs contend that the theory applies, they do not allege that A&D represented them during the limitations period.  Rather, the third amended complaint states that A&D continued to represent them until May 2004.  Third Amended Complaint at ¶ 7.  The billing records that they attached to the third amended complaint do not show that A&D performed any work for plaintiffs after April 2004.  Id., Ex. 34.  Accordingly, the continuing representation doctrine does not save their claims.

Pursuant to the discovery rule, a statute of limitations begins to run when a plaintiff "discovers, or in the exercise of reasonable diligence should have discovered the facts which give rise to his or her cause of action."  Johnson v. Reehoorn, 56 Wn. App. 692, 695 (1990) (internal citation and quotation omitted).  A cause of action for fraud accrues when the aggrieved party discovers the facts constituting the fraud.  RCW 4.16.080(4).

Plaintiffs are not required to have notice of all of the relevant facts to trigger the statute of limitations.  Instead,

> The general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm.  The plaintiff is charged with what a reasonable inquiry would have discovered.  One who has notice of facts

ORDER GRANTING
MOTION TO DISMISS - 3

sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable inquiry would disclose.

Green v. A.P.C., 136 Wn.2d 87, 96 (1998) (internal citations and quotation omitted); see also Hudson v. Condon, 101 Wn. App. 866, 875 (2000) (explaining that the statute of limitations for a fraud claim "commences when the aggrieved party discovers, or should have discovered, the fact of fraud and sustains some damage as a consequence").

The Order explained,

> In August 2003, the IRS issued a notice entitled "Common Trust Fund Straddle Tax Shelter" (the "IRS notice") which stated that "the claimed tax benefits purportedly generated by these transactions are not allowable for federal income tax purposes." Amended Complaint at ¶ 52. That notice specifically disallowed the CTF shelter. Malone was also personally notified of the issue. By letter dated December 22, 2003, CTF President Michael Schwartz advised Malone to file an amended tax return and to retain an attorney. Amended Complaint at ¶ 161; Second Declaration of Michael Malone, (Dkt. #61) ("Second Malone Decl."), Ex. 6 (the "CTF letter"). The CTF letter explained that the IRS notice stated "that the IRS intended to challenge the tax benefits associated with" CTF, the transaction plaintiffs "entered into in 2002." The CTF letter further stated that some of Schwartz's clients were currently under IRS investigation. "This has led me to conclude that the IRS will shortly begin an investigation of my company as well, ultimately requiring me to provide them with a list of all clients that have entered into listed transactions. As such it is almost certain that you will [be] audited at some time in 2004." In addition, contrary to Clark Nuber's assertion that the Sidley Austin opinion letter would preclude penalties, the CTF letter explicitly stated, "The IRS recently has been taking the very aggressive position that tax opinions do not necessarily provide penalty protection on the basis that the taxpayer did not reasonably rely in good faith on the opinion." Malone subsequently retained an attorney.
>
> The CTF letter and the IRS notice put plaintiffs on notice of nearly all of the facts that defendants allegedly concealed from them and that give rise to their claims, including the fact that CTF lacked economic substance, that the IRS would not allow the deductions, that the IRS would audit plaintiffs, and that the Sidley Austin letter would not necessarily prevent the imposition of penalties.

Order at pp. 13-14.[2] During oral argument, plaintiffs argued that they also suffered damages

---

[2] Plaintiffs' amended complaint alleges some additional facts that further confirm that plaintiffs had notice of the claims in late 2003 and early 2004. The third amended complaint alleges: (1) in November 2003, a U.S. senate subcommittee held hearings regarding abusive tax shelters. Later the same month, Malone withdrew nearly all of his original cash contribution from his CTF account, (Third Amended Complaint at ¶¶ 42-44, Ex. 28); (2) in January 2004, Coastal sent a letter to Malone suggesting that plaintiffs withdraw any cash left in their CTF account if they had not already done so, (id., Ex. 28); (3) in January 2004, Malone sent a letter to Coastal asking it to pay his attorney's fees for contesting IRS penalties related to CTF. Id.

ORDER GRANTING
MOTION TO DISMISS - 4

because the loan underlying the transaction was a sham, which they did not learn until March 2007. The Court granted plaintiffs leave to elaborate on that theory, and the third amended complaint does so. Notably, other than asserting that they learned in March 2007 that the loan was a sham,[3] plaintiffs have not identified any other facts learned after the end of 2003 to show that they were unable to file their claims earlier.

Plaintiffs' elaboration of their theory that the loan was a sham shows that the theory has two parts. First, plaintiffs allege that they incurred damages by paying interest and management fees on a loan that never existed. The third amended complaint, however, does not allege that A&D charged or received interest or management fees related to the loan. Second, they contend that A&D conspired with the other defendants to induce them to invest in CTF and failed to advise them that the loan was a sham, which resulted in their payment of back taxes and penalties. However, the claim, as it relates to A&D, is simply a restatement of their claim that CTF lacked economic substance. The sham nature of the loan was one of the reasons why CTF lacked economic substance. The third amended complaint shows that the loan was not a separate transaction, but was a necessary part of the CTF transaction: "the investment program was centered upon a sham loan." Third Amended Complaint at ¶ 34. The third amended complaint also alleges:

- "[T]he CTF transaction was . . . an abusive tax shelter, consisting of a sham loan totally lacking in economic substance." Id. at ¶ 33.
- The loan documentation was part of the CTF transaction. Id. at ¶ 38.
- The loan was "at the heart of the CTF transaction." Id. at ¶ 41.
- The "investment program sold to Plaintiff was centered around a sham loan that was not a bona fide loan." Id. at ¶ 109.
- Defendants had a duty to disclose "those aspects of the investment program that caused it or might cause it to lack economic substances, such as the sham nature of the loan at the center of the transaction." Id. at ¶ 110.

---

[3] Plaintiffs have not explained how they learned that the loan was allegedly a sham in March 2007.

ORDER GRANTING
MOTION TO DISMISS - 5

As plaintiffs' own allegations show, the sham nature of the loan caused it to lack economic substance. Therefore, because plaintiffs knew by the end of 2003 that CTF lacked economic substance, it could have discovered by that time that the loan was a sham.

Furthermore, all of the elements underlying plaintiffs' causes of action had occurred by the end of 2003. A&D had made the alleged misrepresentations, omissions, and false promises and given the allegedly negligent professional advice. Plaintiffs knew that CTF lacked economic substance, that A&D had not advised them of that fact despite an alleged duty to do so, and that they had incurred some damages. They could have brought their claims at that time. See, e.g., Hudson, 101 Wn. App. at 876 (dismissing fraud claims as time barred; explaining that the statute of limitations began to run when plaintiffs could have brought their claims). The fact that plaintiffs incurred additional damages after that time is irrelevant to the statute of limitations inquiry. Id. at 875 ("The running of the statute is not postponed by the fact that the substantial damages occur later, and is not postponed until the specific damages occur for which the plaintiff seeks recovery").

Even if plaintiffs did not know all of the relevant facts by the end of 2003, they were under a duty to investigate at that time. See, e.g., Green, 136 Wn.2d at 96. The *Gevaart* case is instructive. Gevaart v. Metco Constr., Inc., 111 Wn.2d 499, 502 (1988). In *Gevaart*, the plaintiff was injured when she fell off a sloped stair. She sued the construction company for negligence more than three years after her injury occurred. She contended that even though she knew at the time she was injured that the stair was sloped, she did not learn until later that the stair did not conform to the building code. The Washington Supreme Court refused to toll the statute of limitations until the date when plaintiff discovered the building code violation because plaintiff "knew the stair sloped [and b]y the exercise of due diligence she could have determined that the step did not conform to the building code and further, the true reason why the slope existed." Id. (explaining that plaintiff's claims were time barred). Similarly, in this case, the statute of limitations is not tolled until plaintiffs learned *all* of the reasons why the transaction

1 lacked economic substance. Rather, if they had exercised due diligence in 2003 when they
2 learned that the transaction lacked economic substance, they could have learned that the loan
3 allegedly was a sham.

4 Therefore, the discovery rule does not toll the statute of limitations. All of plaintiffs'
5 claims against A&D, except their claim for breach of a written contract, are time barred.

**C.     Breach of a Written Contract.**

A&D seeks dismissal of plaintiffs' breach of contract claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The complaint should be liberally construed in favor of the plaintiff and its factual allegations taken as true. See, e.g., Oscar v. Univ. Students Coop. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992). The Supreme Court has explained that "when allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007) (internal citation and quotation omitted).

The Order dismissed plaintiffs' breach of contract claim with leave to re-plead because they failed to identify a contract or a promise that A&D made and breached. In the current complaint, plaintiffs contend that the November 13, 2001 engagement letter between Clark Nuber and plaintiffs constituted a contract between them and A&D. The letter, however, was not from A&D, and A&D did not sign or ratify it. Instead, plaintiffs allege that Clark Nuber was engaged as A&D's agent at the time. The Court is not required to accept plaintiffs' legal conclusion – that an agency relationship existed – as true. See, e.g., Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). Plaintiffs have not alleged either of the required elements of agency in Washington – mutual consent and control of the agent by the principal. See, e.g., Barker v. Skagit Speedway, Inc., 119 Wn. App. 807, 814 (2003). Without those allegations, their claim of an agency relationship fails. Accordingly, plaintiffs's third amended complaint does not sufficiently allege that Clark Nuber created a contract on A&D's behalf.

1 Even if it did, the breach of contract claim fails as a matter of law because the alleged contract
2 does not make specific promises. The letter contains the following reference to A&D:

> In addition to our services, you have directed us to contact Ed Ehrens, Esq. [sic] to review the proposed documents. Ed will advise you as to his assessment and legal advice regarding the legal aspects of these transactions. Clark Nuber takes no responsibility therefore for the legal advice or consequences of the investment. Specifically, the legal viability of the "insurance" contract has been approved by Mr. Ehrens [sic].

Third Amended Complaint, Ex. 3.

Plaintiffs contend that A&D failed to advise them of the risks associated with CTF and breached the standard of legal care. Third Amended Complaint at ¶ 183. Those claims, however, merely duplicate a professional negligence claim. They also allege that A&D (1) failed to conduct "a thorough, independent review of the CTF transaction to determine that it met the economic substance test," (2) omitted information, (3) and "made false promises about obtaining insurance." <u>Id.</u> at ¶¶ 184, 186. The alleged contract, however, does not contain specific promises to do those things or disclose all facts. Therefore, even if A&D omitted information and engaged in the alleged conduct, they did not violate promises in the contract.

Similarly, plaintiffs allege that A&G violated various rules of professional conduct. <u>Id.</u> at ¶ 188. However, those rules are not actionable as a breach of contract. <u>See, e.g.</u>, <u>Davis v. Davis Wright Tremaine, LLP</u>, 103 Wn. App. 638, 655 (2000) (affirming grant of summary judgment because the attorney's alleged failures were not based on express or implied provisions of the engagement letter; instead, they were "based on implied duties of counsel that do not arise from the contract").

Although plaintiffs contend in their memorandum that A&D breached the duty of good faith and fair dealing, their third amended complaint does not contain that allegation. Therefore, the Court will not consider that claim. For all of these reasons, plaintiffs' breach of contract claim fails as a matter of law.

**D.      Request for Further Amendment.**

Plaintiffs request that the Court grant them leave to amend if it finds deficiencies in their

ORDER GRANTING
MOTION TO DISMISS - 8

pleading.  Although the Court is mindful that it "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), it may deny that leave when further amendment would be futile.  See, e.g., Moreno v. State of California, 25 F. Supp. 2d 1060, 1062 (N.D. Cal. 1998).  In this case, further amendment would be futile.  Plaintiffs have not identified any additional facts or allegations they seek to add.  In addition, as another court in this district has stated in a case involving the same plaintiffs' counsel and similar claims, "[T]he dictates of justice and judicial economy require that the merry-go-round of re-wording, re-fashioning and reinventing the nature of this litigation be halted."  Swartz v. KPMG, LLC, 2008 U.S. Dist. LEXIS 36139 at *78 (W.D. Wash. May 2, 2008).

The discretion of the Court to grant or deny leave to amend is "particularly broad where plaintiff has previously amended the complaint."  Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citation omitted).  In this case, plaintiffs have filed four complaints, all of them deficient in some way.  See, e.g., Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996) (holding that dismissal without leave to amend was appropriate when the plaintiff had filed four complaints but continued to allege insufficient facts).  Furthermore, the Court has given plaintiffs specific instructions on how to fix their complaints, for example by instructing them to specifically identify a promise made and breached, but plaintiffs have not done so.  See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962) (explaining that "repeated failure to cure deficiencies by amendments previously allowed" constituted a basis to deny a motion to amend).

In addition to failing to remedy the deficiencies, plaintiffs have demonstrated an inability to plead with simplicity and clarity.  Despite the clear mandate of Federal Rule of Civil Procedure 8(a), plaintiffs' third amended complaint is 158-pages long and repeatedly references nearly 1,400 pages of attached exhibits.  The fact that plaintiffs' fraud claims are subject to a heightened pleading standard does not excuse the lack of compliance with Rule 8(a).  See, e.g., McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).  Instead of filing a clear, succinct complaint, plaintiffs have provided legions of allegations that are paradoxically both lengthy

and vague. The Court will not require defendants to undergo the expense and burden of slogging through yet another round of lengthy pleading and the inevitable motions to dismiss that would follow. "Pleadings . . . are not essays to be graded by the District Court with allowances for editing and revision." Arnold v. KPMG LLP, 543 F. Supp. 2d 230, 238 (S.D.N.Y. 2008) (dismissing action without leave to amend after plaintiff had amended his complaint three times). Accordingly, the Court denies leave to amend.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS A&D's motion to dismiss (Dkt. #148). Plaintiffs' claims against A&D are dismissed with prejudice.

DATED this 23rd day of February, 2009.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING
MOTION TO DISMISS - 10