1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL MALONE, *et al.*,

Plaintiffs,

v.

CLARK NUBER, P.S., *et al.*,

Defendants.

Case No.  C07-2046RSL

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on motions for summary judgment filed by Multi

National Strategies, LLC, Coastal Trading LLC, Michael N. Schwartz, and David Schwartz

(collectively, the "MNS defendants") and by David Schwartz individually.  Plaintiffs filed a

cross motion for partial summary judgment regarding their claim under the Washington State

Securities Act ("WSSA").

Plaintiffs Michael and Barbara Malone allege that the defendants, who include the MNS

defendants and other entities and individuals too numerous to list, designed, promoted, and

defrauded them into participating in an abusive tax shelter called the "Coastal Trading Common

Trust Fund Series III" and the "Coastal Trading Common Trust Fund Series IV" (collectively, "CTF").  The Internal Revenue Service ("IRS") ultimately disallowed CTF and imposed penalties and interest on plaintiffs, which they now seek to recover from defendants.  Plaintiffs also seek to recover the fees they paid to defendants for professional services that, accordingly to plaintiffs, were performed negligently or not at all.  Through other orders and stipulations, plaintiffs' claims against the other defendants have been resolved and only the MNS defendants remain.

At the parties' request, the Court heard oral argument in this matter on August 26, 2010. For the reasons set forth below, the Court denies plaintiffs' motion for partial summary judgment, grants David Schwartz's motion for summary judgment, and grants the MNS defendants' motion for summary judgment.

## II. DISCUSSION

### A.  Background Facts.

The facts relevant to this motion were set forth in the Court's June 23, 2008 order granting in part and denying in part motions to dismiss filed by several defendants (Dkt. #118) and will not be repeated here.  Coastal Trading was a company dedicated to creating alternative investment strategies for high net worth individuals such as plaintiffs.  Defendant Michael Schwartz was a principle of Coastal Trading and defendant David Schwartz was an employee. Plaintiffs allege that Coastal Trading LLC "designed, implemented, and executed the CTF transaction."  Third Amended Complaint at ¶ 222.  They further allege that the MNS defendants collected fees in connection with the transaction and issued monthly reports to Malone.  Id.

In prior orders, the Court dismissed plaintiffs' federal claims.  It also dismissed their state law claims under the Consumer Protection Act and Criminal Profiteering Act and for unjust enrichment and constructive trust.  Plaintiffs have remaining claims against the MNS defendants for fraud, negligent misrepresentation, violation of the WSSA, breach of contract/implied duty of good faith and fair dealing, breach of fiduciary duty, aiding and abetting a breach of fiduciary

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 2

1   duty, professional negligence, and joint venture conspiracy.  This order addresses those
2   remaining claims.

3   **B.     Applicability of New York Law.**

4       In the MNS defendants' reply in support of their motion for summary judgment, they
5   argued, for the first time, that based on a contractual choice of law provision, New York law
6   applies and requires the dismissal of most of plaintiffs' claims.  The Court issued an order
7   permitting plaintiffs to respond to the new argument, which they have done.

8       As plaintiffs note, the Court typically will not consider arguments made for the first time
9   in a reply memorandum.  See, e.g., Carver v. Gonzales, 2006 U.S. Dist. LEXIS 87020 (W.D.
10  Wash. 2006) ("It is well-established that courts will not consider new arguments raised for the
11  first time in a reply brief.") (citing Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 843 n.6 (9th
12  Cir. 2004) (citing cases)).  The justification for disregarding the new argument is strong in this
13  case: the MNS defendants waited until the last possible moment to raise the issue.  The MNS
14  defendants, collectively, and David Schwartz, individually, filed motions for summary judgment
15  and responded to plaintiffs' motion for summary judgment, all without raising the argument that
16  New York law might apply.  Although defendants might argue that the Court has provided
17  plaintiffs an opportunity to address the issue, the Court permitted plaintiffs only ten pages to do
18  so, far less than the 24 pages they were permitted to use in their opposition memoranda.
19  Moreover, this case has been pending for nearly three years, during which time the parties have
20  litigated the case with reference to Washington law and filed numerous motions all relying on
21  Washington law.  For those reasons, plaintiffs would be prejudiced and significant resources
22  would be wasted if the Court were to determine, at this late date, that New York law applies.
23  Although defendants argue that the issue was "overlooked" because of plaintiffs' voluminous
24  pleadings, that argument is untenable.  Defendants argue that New York law applies based on
25  their own contract, not based on any of plaintiffs' filings.  Accordingly, the Court grants
26  plaintiffs' request to strike the portion of defendants' reply memorandum that argues that New

27
ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING
28
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 3

1   York law applies.

2          The Court also notes that by failing to raise the issue in a timely manner, defendants have

3   waived the affirmative defense that New York law applies and preempts most of plaintiffs'

4   claims.  See, e.g., Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co., 219 F.3d

5   895, 899 (9th Cir. 2000) (explaining that a party waives a challenge to prudential standing, but

6   not constitutional standing, by failing to raise it in a timely manner); see also Schwartz v.

7   Snohomish County, 2006 U.S. Dist. LEXIS 15065 (W.D. Wash. 2006) (explaining that a party

8   may waive an affirmative defense "if either (1) assertion of the defense is inconsistent with the

9   defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense.")

10  (internal citations and quotation omitted); see also Burnside v. Simpson Paper Co., 123 Wn.2d

11  93 (1994) (explaining that because Washington is the forum state, its law applies unless a party,

12  in a timely manner, invokes foreign law).  Defendants did not raise the issue in their answer or

13  any amended answer, or at any time prior to their reply memorandum.  For those reasons,

14  defendants have waived the defense.  The Court will apply Washington law, as the parties have

15  throughout this litigation.

16  **C.     Washington Law: Statute of Limitations.**

17         The MNS defendants argue that all of plaintiffs' claims, except their claim for breach of a

18  written contract, are barred by the applicable statute of limitations.  Most of the actions which

19  underlie plaintiffs' claims occurred in 2001.  Plaintiffs filed their complaint on September 7,

20  2007.  As set forth in prior orders, all of plaintiffs' remaining state law claims have three-year

21  statutes of limitations except their claim of breach of a written contract, which has a six-year

22  statute of limitations pursuant to RCW 4.16.040.  Plaintiffs do not dispute these limitations

23  periods.  Nevertheless, plaintiffs argue that their claims are timely because the applicable

24  statutes of limitations are tolled under the doctrine of continuing representation and/or the

25  discovery rule.

26         **1.     Continuous Representation/Relationship Doctrine.**

27  ORDER DENYING PLAINTIFFS' MOTION FOR
    PARTIAL SUMMARY JUDGMENT AND GRANTING
28  DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 4

1     Under the doctrine of continuing representation, the statute of limitations for tort and

2  contract claims is tolled during a professional's "representation of the client in the same matter

3  from which the malpractice claim arose."  See Burns v. McClinton, 135 Wn. App. 285, 293

4  (2006).  Courts have applied the doctrine to toll claims against attorneys, accountants,

5  physicians, and other fiduciaries.  Id.; see also Hermann v. Merrill Lynch, Pierce, Fenner &

6  Smith, Inc., 17 Wn. App. 626 (1977).[1]

7     Plaintiffs argue that the MNS defendants represented them as late as March 13, 2006

8  because on that date, David Schwartz signed a final tax return on behalf of Belmar Trading Inc.

9  However, as set forth more fully below regarding Schwartz's motion for summary judgment, he

10  signed the return not as an investment advisor, accountant, fiduciary, or in any similar role to

11  which the continuous relationship doctrine has been applied.[2]  Rather, he signed the document as

12  an "officer" and "corporate secretary" of Belmar.  The continuous representation/relationship

13  doctrine has never been applied to the actions of a corporation's own officer, and the policy

14  reasons underlying the doctrine do not support such an extension.  For that reason alone,

15  plaintiffs' theory fails to toll the statutes of limitations.

16     Moreover, the returns were actually filed on behalf of Belmar Trading Inc., a separate

17  legal entity.  Plaintiffs' Reply at p. 6.  Although Belmar is listed as a plaintiff in the complaint,

18  plaintiffs have always defined themselves in this litigation as "Michael and Barbara Malone."

19  Plaintiffs' Motion for Partial Summary Judgment at p. 1.  The Malones have failed to show that

---

[1] Defendants argue that the continuing representation doctrine applies only to claims against attorneys.  However, a recent unpublished Court of Appeals case suggested that the doctrine applies more broadly and the continuing relationship rule "has thus survived in the case of resulting trusts only."  Vollstedt v. Tegman, 2010 Wn. App. LEXIS 730 at *7 (April 12, 2010).

[2] Although Michael Schwartz had a role in preparing the returns, there is no evidence about when that activity occurred, and plaintiffs have not shown that it occurred during the limitations period.  Instead, their argument rests on the allegation that David Schwartz "prepared and signed" the final return in March 2006.  Plaintiffs' Reply at p. 6.

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 5

1   the MNS defendants represented *them* during the limitations period, and they cannot assert a

2   claim on behalf of another legal entity.

3          Even if plaintiffs could overcome those problems, the theory fails.  In a prior motion to

4   dismiss, the MNS defendants argued that the continuing representation doctrine was

5   inapplicable, and the Court explained that the third amended complaint had sufficiently *alleged*

6   facts to show that it could apply.  Order at pp. 8-9 (Dkt. #203).  Now that discovery has been

7   conducted and additional documents submitted, it is clear that the MNS defendants were not

8   plaintiffs' advisors or fiduciaries as alleged.  Defendants other than the MNS defendants were

9   plaintiffs' investment advisors.  Third Amended Complaint at ¶ 28 (alleging that Clark Nuber

10  was plaintiffs' "investment advisor" who had a "long-standing fiduciary relationship" with

11  plaintiffs).  In contrast, the MNS defendants did not occupy a position of trust, nor had they ever

12  represented plaintiffs.  Their contractual duties were owed to the trustee, not to plaintiffs.  In

13  fact, when it became clear that the IRS was disallowing the investment, plaintiffs hired other

14  professionals to advise them, sometimes in a manner adverse to the MNS defendants.

15  Furthermore, the parties' contract explicitly disclaimed a relationship of trust: the CTF private

16  offering memorandum stated that it was not to be construed as "investment advice."  Declaration

17  of Malcolm Harris, (Dkt. #263) ("Harris Decl."), Exs. 14-A and 14-B at p. ii ("Investors are

18  expected to conduct their own inquiries into the program, the trust fund, their structure,

19  investment objectives, business and operations.  The contents of this memorandum are not to be

20  construed as legal, tax, or investment advice.").  The same documents also provide:

21          The program also has been structured to facilitate a tax strategy that each investor has
            independently decided to pursue by making an investment in the program, that each tax
22          strategy is not discussed in this private offering memorandum, each investor has
            independently received a complete description of the federal, state and local tax
23          consequences and potential federal, state and local tax risks of an investment in the
            program from that investor's tax advisor, and anticipates receiving a tax opinion from
24          investor's tax counsel, and will rely exclusively on such advice and opinion with respect
            to all tax matters relating to an investment in the program.  Investors have not received
25          from, nor have investors relied upon, Coastal . . . or any of their affiliates, agents or
            employees for any tax advice or any tax opinion with respect to an investment in the
26          program.

27  ORDER DENYING PLAINTIFFS' MOTION FOR
    PARTIAL SUMMARY JUDGMENT AND GRANTING
28  DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 6

1   Id. at p. i.  The "Securities Warnings and General Information" section of the CTF memoranda

2   stated that defendants were not authorized to provide investors with any information or to make

3   representations outside the memoranda.  Id. at p. ii.  The CTF subscription agreements signed by

4   Malone contain similar provisions.  Id., Exs. 15-A and 15-B at p. D-2 ("Investor has not received

5   from . . . nor has Investor relied upon, Coastal . . . or any of their affiliates, agents or employees

6   for any tax advice or any tax opinion with respect to an investment in the Program.").

7   Accordingly, the documents themselves disclaim any fiduciary or tax/investment advisor role.

8   Plaintiffs also contend that in February 2005, Michael Schwartz sent Mr. Malone a letter

9   enclosing Belmar's tax forms, stating that he "must report" interest income received and a

10   corresponding interest expense "should be reported."  Harris Decl., Ex. 41.  Plaintiffs do not

11   argue that the document is actionable; rather, they argue that it shows that the MNS defendants

12   continued to represent them in 2005.  Even if the letter were construed as tax advice, it does not

13   reflect an on-going fiduciary or advisor relationship if none existed in the first place.  In the

14   absence of such a relationship, the continuing representation doctrine is inapplicable and does

15   not toll the statute of limitations.

16        **2.**    **Discovery Rule.**

17       Plaintiffs also contend that the discovery rule tolls the statutes of limitations.  Pursuant to

18   the discovery rule, a cause of action accrues and the statute of limitations begins to run when a

19   plaintiff "discovers, or in the exercise of reasonable diligence should have discovered the facts

20   which give rise to his or her cause of action."  Johnson v. Reehoorn, 56 Wn. App. 692, 695

21   (1990) (internal citation and quotation omitted).  A cause of action for fraud accrues when the

22   aggrieved party discovers the facts constituting the fraud.  RCW 4.16.080(4).

23       Plaintiffs rely on a recent Supreme Court decision that held that, for purposes of a claim

24   under SEC Rule 10b-5, "the limitations period does not begin to run until the plaintiff . . .

25   discovers or a reasonably diligent plaintiff would have discovered the facts constituting the

26   violation," including scienter.  Merck & Co., Inc. v. Reynolds, __U.S. __, 130 S. Ct. 1784, 1796-

27
28   ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 7

99 (2010).  Plaintiffs' Rule 10b-5 claim, however, was dismissed long ago, so the *Merck*

decision is inapplicable in this case.  Under Washington law, plaintiffs are not required to have

notice of all of the relevant facts to trigger the statute of limitations.  Instead,

> The general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm.  The plaintiff is charged with what a reasonable inquiry would have discovered.  One who has notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable inquiry would disclose.

Green v. A.P.C., 136 Wn.2d 87, 96 (1998) (internal citations and quotation omitted); see also

Hudson v. Condon, 101 Wn. App. 866, 875 (2000) (explaining that the statute of limitations for

a fraud claim "commences when the aggrieved party discovers, or should have discovered, the

fact of fraud and sustains some damage as a consequence").

In a prior order, the Court explained:

> In August 2003, the IRS issued a notice entitled "Common Trust Fund Straddle Tax Shelter" (the "IRS notice") which stated that "the claimed tax benefits purportedly generated by these transactions are not allowable for federal income tax purposes." Amended Complaint at ¶ 52.  That notice specifically disallowed the CTF shelter. Malone was also personally notified of the issue.  By letter dated December 22, 2003, CTF President Michael Schwartz advised Malone to file an amended tax return and to retain an attorney.  Amended Complaint at ¶ 161; Second Declaration of Michael Malone, (Dkt. #61) ("Second Malone Decl."), Ex. 6 (the "CTF letter").  The CTF letter explained that the IRS notice stated "that the IRS intended to challenge the tax benefits associated with" CTF, the transaction plaintiffs "entered into in 2002."  The CTF letter further stated that some of Schwartz's clients are currently under IRS investigation.  "This has led me to conclude that the IRS will shortly begin an investigation of my company as well, ultimately requiring me to provide them with a list of all clients that have entered into listed transactions.  As such it is almost certain that you will [be] audited at some time in 2004."  In addition, contrary to Clark Nuber's assertion that the Sidley Austin opinion letter would preclude penalties, the CTF letter explicitly stated, "The IRS recently has been taking the very aggressive position that tax opinions do not necessarily provide penalty protection on the basis that the taxpayer did not reasonably rely in good faith on the opinion."  Malone subsequently retained an attorney.

> The CTF letter and the IRS notice put plaintiffs on notice of nearly all of the facts that defendants allegedly concealed from them and that give rise to their claims, including the fact that CTF lacked economic substance, that the IRS would not allow the deductions, that the IRS would audit plaintiffs, and that the Sidley Austin letter would not necessarily prevent the imposition of penalties.

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 8

1    Order (Dkt. #118) at pp. 13-14.[3]

2         After defendants filed motions to dismiss, plaintiffs argued that they suffered damages

3    because the loan underlying the transaction was a sham, which they did not learn until March

4    2007.  The Court granted plaintiffs leave to elaborate on that theory, and the third amended

5    complaint does so.  Plaintiffs allege that former defendant HVB agreed to provide a $15.6

6    million loan to Braxton Management, Inc. (the "loan"), which would in turn loan the funds to

7    Malone, who would invest the funds in a corporation wholly owned by him.  Malone apparently

8    planned to invest the funds in two entities controlled by him: Belmar Investment Trust and

9    Belmar Trading, Inc.  The funds were to be used to purchase foreign currency options that

10   generated both losses and gains.  The losses would be used to offset Malone's capital gains

11   while the gains were allocated to tax-indifferent trusts.  Notably, other than asserting that they

12   learned in March 2007 that the loan was a sham, plaintiffs have not identified any other facts

13   learned after the end of 2003 to show that they were unable to file their claims earlier.

14        Plaintiffs' elaboration of their theory that the loan was a sham shows that the theory is

15   simply a restatement of their claim that CTF lacked economic substance.  The sham nature of the

16   loan was one of the reasons why CTF lacked economic substance.  Plaintiffs admitted as much

17   in their discovery responses, stating the IRS notice indicated that the loan was a "'sham' loan."

18   Harris Decl., Ex. 61 at p. 11.  The third amended complaint also shows that the loan was not a

19   separate transaction, but was a necessary part of the CTF transaction: "the investment program

20   was centered upon a sham loan."  Third Amended Complaint at ¶ 34.  The third amended

---

22        [3] Plaintiffs' amended complaint alleges some additional facts that further confirm that
23   plaintiffs had notice of the claims in late 2003 and early 2004.  The third amended complaint
     alleges: (1) in November 2003, a U.S. senate subcommittee held hearings regarding abusive tax
24   shelters.  Later the same month, Malone withdrew nearly all of his original cash contribution
     from his CTF account, (Third Amended Complaint at ¶¶ 42-44, Ex. 28); (2) in January 2004,
25   Coastal sent a letter to Malone suggesting that plaintiffs withdraw any cash left in their CTF
     account if they had not already done so, (id., Ex. 28); (3) in January 2004, Malone sent a letter to
26   Coastal asking it to pay his attorney's fees for contesting IRS penalties related to CTF.  Id.

27

1   complaint also alleges:

2   ●   "[T]he CTF transaction was . . . an abusive tax shelter, consisting of a sham loan totally
        lacking in economic substance." <u>Id.</u> at ¶ 33.

3

4   ●   The loan documentation was part of the CTF transaction. <u>Id.</u> at ¶ 38.

5   ●   The loan was "at the heart of the CTF transaction." <u>Id.</u> at ¶ 41.

6   ●   The "investment program sold to Plaintiff was centered around a sham loan that was not a
        bona fide loan." <u>Id.</u> at ¶ 109.

7   ●   Defendants had a duty to disclose "those aspects of the investment program that caused it
        or might cause it to lack economic substances, such as the sham nature of the loan at the
8       center of the transaction." <u>Id.</u> at ¶ 110.

9   As plaintiffs' own allegations show, the sham nature of the loan caused it to lack economic

10  substance.  Therefore, because plaintiffs knew by the end of 2003 that CTF lacked economic

11  substance, it could have discovered by that time that the loan was a sham.

12      Furthermore, all of the elements underlying plaintiffs' causes of action had occurred by

13  the end of 2003.  The MNS defendants had made the alleged misrepresentations and omissions.

14  Plaintiffs knew that CTF lacked economic substance, that the MNS defendants had not advised

15  them of that fact despite an alleged duty to do so, and that they had incurred some damages.

16  They could have brought their claims at that time.  <u>See, e.g.</u>, <u>Hudson</u>, 101 Wn. App. at 876

17  (dismissing fraud claims as time barred; explaining that the statute of limitations began to run

18  when plaintiffs could have brought their claims).  The fact that plaintiffs incurred additional

19  damages after that time is irrelevant to the statute of limitations inquiry.  <u>Id.</u> at 875 ("The

20  running of the statute is not postponed by the fact that the substantial damages occur later, and is

21  not postponed until the specific damages occur for which the plaintiff seeks recovery").

22      Even if plaintiffs did not know all of the relevant facts by the end of 2003, they were

23  under a duty to investigate at that time.  <u>See, e.g.</u>, <u>Green</u>, 136 Wn.2d at 96.  The *Gevaart* case is

24  instructive.  <u>Gevaart v. Metco Constr., Inc.</u>, 111 Wn.2d 499, 502 (1988).  In *Gevaart*, the

25  plaintiff was injured when she fell off a sloped stair.  She sued the construction company for

26  negligence more than three years after her injury occurred.  She contended that even though she

27  ORDER DENYING PLAINTIFFS' MOTION FOR
    PARTIAL SUMMARY JUDGMENT AND GRANTING
28  DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 10

1   knew at the time she was injured that the stair was sloped, she did not learn until later that the

2   stair did not conform to the building code.  The Washington Supreme Court refused to toll the

3   statute of limitations until the date when plaintiff discovered the building code violation because

4   plaintiff "knew the stair sloped [and] by the exercise of due diligence she could have determined

5   that the step did not conform to the building code and further, the true reason why the slope

6   existed."  Id. (explaining that plaintiff's claims were time barred).  Similarly, in this case, the

7   statute of limitations is not tolled until plaintiffs learned *all* of the reasons why the transaction

8   lacked economic substance.  Rather, if they had exercised due diligence in 2003 when they

9   learned that the transaction lacked economic substance, they could have learned that the loan

10  allegedly was a sham.

11        Therefore, the discovery rule does not toll the statute of limitations.  All of plaintiffs'

12  claims against the MNS defendants, except their claim for breach of a written contract, are time

13  barred.

14  **D.    Claims Against David Schwartz: Tax Preparer Liability.**

15        In addition to being time barred, defendants argue that plaintiffs' claims against defendant

16  David Schwartz fail on the merits because his role was merely clerical and ministerial.

17  Declaration of David Schwartz, (Dkt. #254) ("D. Schwartz Decl.")  at ¶¶ 3-4; Declaration of

18  Michael Schwartz, (Dkt. #262) ("M. Schwartz Decl.") at ¶¶ 4, 5.  David Schwartz never acted as

19  plaintiffs' investment advisor.  D. Schwartz Decl. at ¶ 7.  Rather than rebutting that evidence,

20  plaintiffs have asserted a new claim against David Schwartz: they allege that he is liable as

21  plaintiffs' tax preparer.  The Internal Revenue Code provides for penalties against a "tax return

22  preparer" who understates a taxpayer's liability, including taking an unreasonable position on a

23  tax shelter in a return "unless it is reasonable to believe that the position would more likely than

24  not be sustained on the merits."  I.R.C. § 6694(a)(2)(C).  The Code defines a tax return preparer

25  as "any person who prepares for compensation" a tax return, with certain exceptions.  I.R.C.

26  § 7701(a)(36).

27
28

1    Plaintiffs note that David Schwartz signed three Form 1120S forms, "US Income Tax

2  Return for S Corporation" for Belmar Trading Inc. for the tax years 2002, 2003, and 2004.

3  Although the applicable IRC provision provides for penalties, plaintiffs have not shown that it

4  supplies a private right of action.  Even if it did, plaintiffs have failed to provide any evidence

5  that David Schwartz prepared the relevant returns as a tax preparer for compensation.  Instead,

6  as they admit, he signed the returns in his role as an officer of Belmar Trading Inc.  Declaration

7  of Brian Isaacson, (Dkt. #278) ("Isaacson Decl."), Ex. C at CNMA018022.  In the "title" section

8  next to his signature, he wrote, "Corporate Secretary."  Id.  Consistent with acting in that role, he

9  added that the form had been "self prepared" and did not sign the section titled, "Paid Preparer's

10 Use Only."  Id.  In fact, Schwartz signed the forms as an officer of the company with the express

11 written consent of Mr. Malone, who was the sole director of Belmar Trading, Inc.  D. Schwartz

12 Decl. at ¶ 14, Ex. 7 ("Unanimous Written Consent of the Sole Director of Belmar Trading Inc.");

13 Declaration of David Schwartz in Support of His Reply (Dkt. #285) at ¶ 4.  Therefore, plaintiffs'

14 claim that Schwartz prepared the returns for compensation is unsupported and in fact,

15 contradicted by the record.

16    Plaintiffs argue in the alternative that David Schwartz's motion should be continued to

17 allow them to take Mr. Schwartz's deposition.  They state that the discovery is necessary to

18 "expose the extent of Schwartz's liability and role in the CTF."  Opposition to D. Schwartz's

19 Motion for Summary Judgment at p. 6.  Plaintiffs should have had that basic information before

20 they filed the complaint, or at least obtained it since filing the case.  Although they note that the

21 parties recently agreed to continue the discovery deadline, that does not explain why plaintiffs

22 failed to conduct the deposition sooner.  Certainly, they could have done so.  Furthermore,

23 plaintiffs have not identified what, specifically, they hope to learn or how the information will

24 defeat summary judgment.  Plaintiffs' dilatory conduct and vague hope that discovery might

25 uncover additional information are insufficient to delay a ruling on the motion for summary

26 judgment.  See, e.g., Garret v. City & County of San Francisco, 818 F.2d 1515, 1518 (9th Cir.

27

28
ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 12

1   1987) (explaining that a party opposing the dispositive motion "must make clear what
2   information is sought and how it would preclude summary judgment."). The Court will
3   therefore grant David Schwartz's motion for summary judgment.

4   **E.      Claim for Breach of Written Contract and Request for a Continuance.**

5          As alleged in the complaint, plaintiffs' breach of contract claim comprised several
6   different theories. Plaintiffs alleged that all defendants entered into written contracts with them
7   "to provide Plaintiffs with professionally competent investment advice, legal services,
8   accounting services and financial services," to exercise applicable standards of care, and comply
9   with their legal and professional obligations. Third Amended Complaint at ¶ 389. That claim
10  relies on duties implied under defendants' professional obligations, simply restates a
11  professional negligence claim, and is time barred for the reasons set forth above. Plaintiffs also
12  alleged that defendants "promised performance they knew or should have known they could not
13  deliver." Id. at ¶ 393. That vague allegation, however, is untethered to a promise of any specific
14  result, and the contracts are devoid of any such provisions. Plaintiffs appear to have abandoned
15  those claims, and all other breach of contract claims, except one based on the following theory:
16  plaintiffs contend that the MNS defendants breached the terms of the CTF Private Offering
17  Memorandum ("POM") by falsely promising that the transaction would include a loan, when in
18  fact the loan was a sham. Third Amended Complaint at ¶¶ 226-28, 390. That contention has
19  two parts. First, plaintiffs contend that defendants misrepresented their ability to provide
20  legitimate insurance for the loan. Plaintiffs' Opposition at p. 11. The undisputed evidence,
21  however, shows that although the MNS defendants drafted paperwork regarding the insurance,
22  plaintiffs never completed their portion of the paperwork to finalize the insurance. M. Schwartz
23  Decl. at ¶ 19. Instead, they converted the loan to a non-recourse loan. In light of that unrebutted
24  evidence, plaintiffs' claim on that theory fails.

25

26

27  ORDER DENYING PLAINTIFFS' MOTION FOR
    PARTIAL SUMMARY JUDGMENT AND GRANTING
28  DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 13

1    Second, plaintiffs contend that HVB[4] never actually issued the loan, in violation of

2    defendants' promise that a loan would be issued.  In support of that claim, plaintiffs contend that

3    "Schwartz admitted that he believed the risk of loss on the CTF loan was virtually zero."

4    Plaintiffs' Opposition at p. 6 (emphasis omitted).  That statement, however, is neither an

5    admission nor circumstantial evidence that the loan was a sham.  Rather, as Michael Schwartz

6    stated in his declaration, he agreed to provide insurance on the loan because he believed the loan

7    was not risky.  M. Schwartz Decl. at ¶ 18 ("I believe that Plaintiffs' ability to claim tax benefits

8    generated from their CTF investment on their joint federal income tax returns would not have

9    been disallowed by the IRS had they obtained such insurance.").  Schwartz's statement that he

10   did not believe the borrowers were at risk of defaulting on the loan is not the same as stating, as

11   plaintiffs allege, that the loan itself would not be made.

12   Plaintiffs also argue that HVB has stated, in a Statement of Admitted Facts in connection

13   with a deferred prosecution agreement in another forum, that it made loans that were not bona

14   fide.  Isaacson Decl., Ex. A (Declaration of Tarifa Laddon).  Specifically, HVB stated,

> [B]etween 1996 and 2002 HVB participated in a number of fraudulent tax shelter
> transactions devised by others, including a series of transactions known as "Bond Linked
> Issue Premium Structure" ("BLIPS"), "Custom Adjustable Rate Debt Structure"
> ("CARDS"), "common trust fund," and "357(c)" transactions.  HVB's activities in
> connection with these and other transactions included: (i) participating in transactions
> purporting to be loans that were not bona fide loans . . . .

Id.  Laddon submitted her declaration and the Statement of Admitted Facts before this Court

when HVB was a defendant in this matter, so it is properly authenticated.  The Court takes

judicial notice of the document because it was filed in another forum.  Plaintiffs' loan was

purported to be issued in 2001, within the time frame in the statement.  However, although

plaintiffs argue that the statement means "all of the loans" made during the six-year time period

---

[4] This Court dismissed the action against the HVB entities for lack of personal
jurisdiction and improper venue.  Plaintiffs subsequently filed suit against those entities in the
U.S. District Court for the Southern District of New York, which subsequently dismissed the
claims as time barred.

were shams, the statement does not say that.  Nor does the document mention the MNS

defendants, plaintiffs, the transaction at issue in this case, or the programs involved in this case:

the Coastal Trading Common Trust Fund Series III and Coastal Trading Common Trust Fund

Series IV.  Although the document provides additional detail regarding the BLIPS program and

other transactions, it does not do so regarding the CTF transactions.  Plaintiffs attempt to bolster

their argument with a report from their purported expert, Calvin Johnson, who opines, "In 2006

HvB entered into a deferred prosecution agreement agreeing to pay a fine of $29 million and

accepting and admitting that it had participated in 'fraudulent and unlawful' shelters including

23 common trust fund shelters like the one sold to the Malones."  Isaacson Decl., Ex. B.  That

opinion, however, even it were accepted, does not state that the Malones' loan was a sham, nor

would it have a basis for doing so.  In contrast, defendants have filed a declaration from the

Treasurer and Vice President of HVB-Finance who states, in a declaration submitted under

penalty of perjury, that the loan was made: "Pursuant to the loan agreement dated December 3,

2001, HVB-Finance made a loan to Braxton Management, Inc. ("Braxton"), a New Jersey based

company."  Harris Decl., Ex. 56 (Declaration of John Gallagher at ¶ 5) (explaining that the loan

was made and serviced in New York); see also M. Schwartz Decl. at ¶ 15 (explaining that the

loan was a "bona fide loan that was outstanding at the time of Plaintiffs' participation in the CTF

transaction.  The loan started with HVB-NY and ended with . . . HVB-SF.").

　　　Plaintiffs argue that they may rely on circumstantial evidence, *i.e.*, the deferred

prosecution agreement, to defeat summary judgment, but as set forth above, that agreement is

unpersuasive regarding the Malones' loan.  Furthermore, this is not a case where reliance on

such evidence is required.  Because the loan proceeds were to come to Malone, albeit indirectly,

for him to invest in the Belmar entities, he should have known whether the loan ever actually

funded.  Plaintiffs do not allege that they never received the loan proceeds.  Nor is there any

evidence that they ever complained to defendants about not receiving those proceeds.  To the

contrary, Mr. Malone explicitly represented that he received the loan proceeds as contemplated.

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 15

1    In a letter to Sidley Austin Brown & Wood LLP, Malone stated that pursuant to the program, he

2    "borrowed $15,600,000 cash from Braxton Inc. ("Loan"). . . .  Investor then lent the proceeds of

3    the Loan to Investments on the same terms to Investments."[5]  Harris Decl., Ex. 19 at pp. 6-7.

4            There is also no need to rely on unsupported inferences based on the deferred prosecution

5    agreement because whether or not the loan was made should be documented.  Plaintiffs could

6    have obtained evidence regarding whether the loan was made, but they have not done so.

7    Instead, they now request a continuance to conduct discovery.  However, they have not

8    diligently pursued opportunities to take discovery since this case was filed.  They have not taken

9    any depositions in this case.  They issued a subpoena to HVB in January 2010, long after this

10   case was filed, and never issued a properly narrowed subpoena after the district court in the

11   Southern District of New York quashed the subpoena as overly broad and unduly burdensome,

12   which it certainly was.  Although plaintiffs note that the discovery deadline has been extended in

13   this case, the real issue is whether plaintiffs have diligently pursued discovery, and they have

14   not.  In addition, plaintiffs have never specified what they hope to obtain from a continuance.

15   The failure to do so, combined with their overbroad requests to HVB, demonstrate that they are

16   seeking to fish for helpful documents.  Accordingly, their request for a continuance is denied,

17   and their breach of contract claim fails as unsupported.

18                                **III. CONCLUSION**

19          For all of the foregoing reasons, the Court DENIES plaintiffs' motion for partial summary

20   judgment (Dkt. #249), GRANTS David Schwartz's motion for summary judgment (Dkt. #253),

21   and GRANTS the MNS defendants' motion for summary judgment (Dkt. #261).  The Clerk of

22

23

24

25          [5] During oral argument, plaintiffs' counsel contended that the letter is the result of the law
26   firm putting words in plaintiffs' mouths.  There is no evidence to support that allegation.

27   ORDER DENYING PLAINTIFFS' MOTION FOR
     PARTIAL SUMMARY JUDGMENT AND GRANTING
28   DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 16

1    the Court is directed to enter judgment in favor of defendants and against plaintiffs.

2

3         DATED this 30th day of August, 2010.

4

5

6                                        Robert S. Lasnik
                                         United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   ORDER DENYING PLAINTIFFS' MOTION FOR
     PARTIAL SUMMARY JUDGMENT AND GRANTING
28   DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 17